559 A.2d 1018

**David D. SCHRECK et al., Appellants,**

**v.**

**NORTH CODORUS TOWNSHIP, Donald R. Bankert and Gladys M. Bankert et al., Appellees.**

**David D. SCHRECK et al.**

**v.**

**NORTH CODORUS TOWNSHIP et al.**

**Appeal of Donald R. BANKERT and Gladys M. Bankert.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1989.

Decided June 9, 1989.

408

Gilbert G. Malone, Victor A. Neubaum, Malone & Neubaum, York, for appellants/appellees, David D. Schreck, et al.

Karen L. Semmelman, Gavin W. Markey, Hoffmeyer & Semmelman, York, for appellants/appellees, Donald R. Bankert and Gladys M. Bankert.

James W. Hennessey, Joanne Steinke Faul, Sherr, Moses Joffe & Zuckerman, Norristown, for appellees, North Codorus Tp., et al.

Raymond R. Smith, York, for C.L. Robinson & Sons.

Scott L. Kelley, Stonesfier & Kelley, Hanover, for Frances R. Gebhart Bldg., et al.

W. William Anderson, Smith & LeCates, York, for Wallen Homes, Inc.

Thomas F. Meister, Stetler & Gribbin, York, for Gordon L. Brown, et al.

J. Christian Ness, York, for appellees.

Before CRUMLISH, Jr., President Judge, and
CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY
and SMITH, JJ.

PALLADINO, Judge.

David D. Schreck, Karen A. Snyder Schreck, James W. Reichard, Julie L. Reichard, William E. Altland, Judy A. Altland, Keith D. Wong, and Laurie A. Wong (collectively, Plaintiffs) and Donald R. Bankert and Gladys M. Bankert (Bankerts) appeal from an order of the Court of Common Pleas of York County (trial court) granting summary judgment in favor of North Codorus Township (Township) and Gordon L. Brown (Brown). We affirm.

The underlying facts of this case are extensively set forth in *Schreck v. North Codorus Township (Schreck I)*, 113 Pa. Commonwealth Ct. 414, 537 A.2d 105 (1988). Briefly, Plaintiffs brought a civil action in the trial court against the Township, the Bankerts, and Brown. Plaintiffs' action consisted of trespass and assumpsit counts against the Bankerts, an assumpsit count against the Township,[1] and a trespass count pursuant to 42 U.S.C. § 1983 against Brown.

---

1. To summarize, Plaintiffs' assumpsit count against the Township alleged that Brown, as a duly authorized agent of the Township, met

The Bankerts thereafter filed crossclaims in assumpsit against the Township and Brown. The Township filed a crossclaim against Brown, but withdrew it on June 3, 1988.

The Township filed preliminary objections in the nature of a demurrer to Plaintiffs' complaint, alleging that Plaintiffs had failed to state a cause of action. The trial court overruled the preliminary objections by order dated April 3, 1984. Thereafter, in their answer and new matter, both the Township and Brown raised the affirmative defense of governmental immunity. On September 26, 1985, Brown filed a motion for summary judgment, which was denied by the trial court by order dated November 25, 1985.

with David Schreck and showed him a percolation test report and soil description indicating that the soil on the lot which Schreck planned to purchase from the Bankerts was suitable for an on-site sewage disposal system. Plaintiff Schreck and Brown completed an application for a sewage disposal system permit and Schreck then paid to the Township $25.00 as part of the application process. The Township, by its agent Brown, issued a permit to Schreck for the installation of the sewage system. The remainder of Plaintiffs purchased their homes from the Bankerts or Wallen Homes, Inc.; in the case of these Plaintiffs, either the Bankerts or Wallen Homes, Inc. made arrangements with the Township and Brown for the requisite site tests and permits. Plaintiffs further alleged that the Township held itself out as having expertise in the location and design of sewage disposal systems and required all persons planning to install a sewage disposal system to secure a permit from the Township and install the system consistent with the design prepared by the Township or, in the alternative, with a design approved by the Township. Plaintiffs further alleged that they relied upon the Township's expertise with respect to the suitability of the lots for on-site sewage systems in purchasing the lots and building homes on them. Plaintiffs averred that they had no expertise as to the location or design of sewage disposal systems. Plaintiffs also alleged that after the sewage systems were installed on their respective lots, the Township, through its agent Brown, inspected and approved the systems. Plaintiffs alleged that in reliance upon the permits issued by the Township and the Township's expertise, Plaintiffs materially altered their positions by purchasing the lots and constructing their homes. Plaintiffs averred that the Township received compensation for its services and was under a duty to perform inspections and tests to determine whether on-site sewage systems could safely be located on Plaintiffs' lots, where such systems could be located, and how the systems should be designed. Plaintiffs alleged that in 1983, the sewage disposal systems began to malfunction. Finally, Plaintiffs alleged that the Township breached its contract with Plaintiffs by failing to perform the necessary tests, failing to correctly analyze soil conditions, improperly issuing permits for systems to be located on land unsuitable for those systems, and improperly designing the systems.

The Bankerts thereafter filed a motion for leave to amend their crossclaims against the Township and Brown on February 6, 1986. On February 6, 1986, the trial court issued a rule to show cause why Bankerts' motion for leave to amend should not be granted. However, before the trial court took any action on the Bankerts' motion, Brown requested, and was granted, reconsideration of his motion for summary judgment.

By order dated August 20, 1986, the trial court granted Brown's motion for summary judgment and dismissed him from the action. The Bankerts and the Township appealed to this court, contending that the trial court erred in dismissing Brown entirely from the case. In *Schreck I,* we affirmed the dismissal of Brown as to Plaintiffs' action against him, but reversed the dismissal of Brown as to the Township and the Bankerts because Brown's motion for summary judgment was directed only to Plaintiffs' claims. In addition, we concluded that the trial court should have first ruled on the Bankerts' motion for leave to amend their crossclaims. In our order, we noted that Brown was not precluded from filing a motion for summary judgment as to the crossclaims against him by the Township and the Bankerts.

On remand, by order dated March 3, 1988, the trial court granted the Bankerts' motion for leave to amend their crossclaims against the Township and Brown. On June 3, 1988, the Bankerts filed their amended crossclaim.[2] On the

---

2. The Bankerts averred in their amended crossclaim against the Township and Brown that the Bankerts paid a fee to the Township in order to obtain certification from the Township that the soil on the lots in question was suitable for on-site sewage disposal systems, that the Township certified the soil as suitable, and that the Township breached its contract with the Bankerts when the soil proved to be unsuitable. The Bankerts further alleged that in selling the lots to Plaintiffs for residential development, they were induced to act and justifiably relied upon the Township's actions and expertise. The Bankerts averred that by approving their subdivision plan, the Township impliedly warranted that the lots sold to Plaintiffs were suitable for residential construction and on-site sewage disposal systems. The Bankerts' crossclaim against Brown sets forth substantially similar breach of contract and implied warranty allegations.

same day, the Township and Brown filed a motion for summary judgment as to all claims against them, contending that the provisions of 42 Pa.C.S. §§ 8541–8564 afforded them immunity from trespass actions not falling within the exceptions enumerated in 42 Pa.C.S. § 8542(b) *and* from all assumpsit actions.

By order dated September 19, 1988, the trial court granted summary judgment to the Township and Brown. The trial court concluded that the Township and Brown were immune from trespass actions since none of the exceptions listed in 42 Pa.C.S. § 8542(b) were applicable. The trial court further concluded that the Township and Brown were immune from assumpsit actions, reasoning that the elimination of the title "Political Subdivision Tort Claims Act" [3] from the local governmental immunity provisions formerly found in Title 53 and now found at 42 Pa.C.S. §§ 8541–8564, evidenced a legislative intent to cloak municipalities and their officers/employees with immunity from *all* actions except those which come within the purview of 42 Pa.C.S. § 8542(b).

On consolidated appeals to this court, Plaintiffs and the Bankerts assert that the trial court erred in granting summary judgment in favor of the Township and Brown. Plaintiffs and the Bankerts contend that the provisions of 42 Pa.C.S. §§ 8541–8564 do not afford immunity to a municipality and/or sewage enforcement officer (SEO) from contract actions, but only from actions sounding in tort. Plaintiffs also contend that the Township should not have been given a second chance to test the sufficiency of the pleadings, alleging that the trial court had previously overruled the Township's preliminary objections in the nature of a demurrer. Finally, Plaintiffs assert that the Township's motion for summary judgment was untimely filed, pointing out that the original complaint was filed on January 27,

---

**3.** Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§ 5311.101–5311.803, repealed and substantially reenacted by the Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa.C.S. §§ 8541–8564.

1984 and discovery was completed in November of 1985. Plaintiffs argue that the Township's motion for summary judgment, which was not filed until June 3, 1988, was for the purpose of delaying the trial. We will address these arguments in reverse order.

Our scope of review of a trial court's grant of summary judgment is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Herman v. Greene County Fair Board*, 112 Pa. Commonwealth Ct. 615, 535 A.2d 1251 (1988). A motion for summary judgment may properly be granted when the moving party establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Harding v. Galyias*, 117 Pa. Commonwealth Ct. 371, 544 A.2d 1060 (1988). In considering a motion for summary judgment, all well-pleaded facts, but not conclusions of law, in the non-moving party's pleadings must be accepted as true. *Id.*

■ Plaintiffs first assert that the Township's motion for summary judgment was untimely filed.[4] Pa.R.C.P. No. 1035(a) states that a motion for summary judgment may be filed after the pleadings are closed, but within such time as not to delay trial. This rule also provides that a party may move for summary judgment based upon the pleadings and any depositions, answers to interrogatories, admissions on file, and supporting affidavits. Thus, the rule clearly contemplates the filing of a motion for summary judgment based upon discovery materials, as was done here. Review of the docket entries in this case also discloses that this case had not been listed for trial at the time the Township and Brown filed their motion for summary judgment. Accordingly, we conclude that the motion for summary judgment was timely filed.

4. The trial court concluded that because our order in *Schreck I* did not preclude Brown from filing a motion for summary judgment as to the Bankerts' crossclaims, the motion for summary judgment by the Township and Brown on June 3, 1988 was timely filed.

■ Plaintiffs next contend that the Township was improperly given a second opportunity to challenge the sufficiency of their complaint. Plaintiffs assert that because the trial court previously overruled the Township's preliminary objections in the nature of a demurrer, the Township should not have been permitted to test the sufficiency of Plaintiffs' complaint again by a motion for summary judgment. In this case, the Township's preliminary objections in the nature of a demurrer raised the issue of the existence of a contract between the Township and Plaintiffs.[5] The Township's motion for summary judgment was directed to the issue of immunity from a contract action, assuming a contract existed.

Pa.R.C.P. No. 1017(b) provides that preliminary objections shall be limited to: petitions raising questions of jurisdiction or venue, or the form or service of a writ of summons; motions to strike off a pleading because of lack of conformity to law or rule or court, or because of scandalous or impertinent matter; motions for more specific pleading; demurrers; and petitions raising the defense of lack of capacity to sue, pendency of a prior action, nonjoinder of a necessary party, or misjoinder of a cause of action. Pa.R. C.P. No. 1030 provides that all affirmative defenses, including the defense of immunity from suit, shall be raised in a responsive pleading under the heading "New Matter." As the trial court correctly noted, because the defense of immunity may only be raised in new matter, the fact that the trial court had previously overruled the Township's demurrer could not preclude consideration of the Township's motion for summary judgment based upon the defense of immunity.

Finally, Plaintiffs and the Bankerts contend that the trial court erred in granting summary judgment, alleging that

---

5. In its preliminary objections in the nature of a demurrer, the Township contended that it was under a pre-existing legal duty to perform the services requested by Plaintiffs and, therefore, there was no consideration to support a contract between the parties. The Township asserted that Plaintiffs failed to state a cause of action for breach of contract.

the provisions of 42 Pa.C.S. §§ 8541–8564 do not afford a municipality and/or its SEO immunity from contract actions or actions based upon an implied warranty.[6] In support of this contention, Plaintiffs and the Bankerts cite the Pennsylvania Supreme Court's recent decision in *Gall v. Allegheny County Health Department*, 521 Pa. 68, 555 A.2d 786 (1989) as controlling authority.

Initially, we note that 42 Pa.C.S. § 8541 states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *See also* 42 Pa.C.S. §§ 8545, 8546 (official liability and official immunity). 42 Pa.C.S. § 8542(a) provides that a local agency shall be liable for damages on account of injury to a person or property where the damages would be recoverable under common law, or a statute creating a cause of action, if the injury was caused by a person not having available the defense of immunity *and* where the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties. Finally, 42 Pa.C.S. § 8542(a) states that the injury to person or property must fall within one of the provisions of 42 Pa.C.S. § 8542(b).

This court has previously rejected attempts to circumvent the above immunity provisions of 42 Pa.C.S. §§ 8541–8564 by fashioning a cause of action in assumpsit which is in reality nothing more than a cause of action sounding in tort. *See Gilius v. Board of Supervisors of Fairview Township,*

6. *See* footnotes 1 and 2, *supra.* Plaintiffs and the Bankerts assert that the Political Subdivision Tort Claims Act was enacted by the legislature in response to the Pennsylvania Supreme Court's decision in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), in which the supreme court abolished the judicially created doctrine of governmental immunity from tort claims. Plaintiffs and the Bankerts contend that contract claims were never subject to the defense of immunity and, therefore, that the Political Subdivision Tort Claims Act and current immunity statute have no effect on the viability of contract actions against a local governmental agency.

122 Pa. Commonwealth Ct. 371, 552 A.2d 327 (1988). In *Gall v. Allegheny County Health Department (Gall I)*, 98 Pa. Commonwealth Ct. 175, 510 A.2d 926 (1986), we addressed negligence and breach of warranty claims brought by persons who ingested giardia-infested water. In *Gall I*, the plaintiffs alleged that the City of McKeesport and its Water Authority breached an implied warranty of merchantability and fitness by failing to provide reasonably clean and safe water, thereby causing damage to the plaintiffs. We sustained the preliminary objections in the nature of a demurrer filed by the City and the Water Authority, holding that a municipality and those acting within the scope of their employment with the municipality were immune from suit under 42 Pa.C.S. § 8542 for negligently supplying impure water to the public. We further stated that having concluded that a municipality could not be held liable on a negligence theory, neither could it be held liable on a theory of breach of implied warranty because there was no implied warranty of merchantability in connection with the sale or supply of water.

In *Olympic, Inc. v. McKeesport Municipal Water Authority*, 104 Pa. Commonwealth Ct. 107, 521 A.2d 95 (1987), we addressed negligence and breach of warranty claims in a similar fact pattern and held, on the basis of *Gall I*, that the City of McKeesport and the Municipal Water Authority could not be held liable on a theory of breach of implied warranty to persons who ingested giardia-infested water or to a restaurant which used the infested water.[7]

In *Gall v. Allegheny County Health Department (Gall II)*, 521 Pa. 68, 555 A.2d 786 (1989), the Pennsylvania

---

7. *See also Ruditsky v. Orben*, 121 Pa. Commonwealth Ct. 215, 550 A.2d 836 (1988) (neither township nor sewage enforcement officer could be held liable on theory of breach of implied warranty based upon allegations by plaintiffs that they purchased property after inspection of land by sewage enforcement officer and issuance of on-site sewage disposal system permit by township which later revoked the permit when system was installed in a different location and with a different design).

Supreme Court reversed our determination that there was no implied warranty of merchantability in connection with the sale or supply of water. The supreme court concluded that the plaintiffs in *Gall* had stated a cause of action based upon a breach of implied warranty, holding that water constituted "goods" to which the implied warranty of merchantability of section 2314 of the Pennsylvania Commercial Code, 13 Pa.C.S. § 2314, applied.

In *Miller v. McKeesport Municipal Water Authority,* 521 Pa. 77, 555 A.2d 790 (1989), the supreme court affirmed in part and reversed in part our decision in *Olympic, Inc.* Applying its reasoning in *Gall II,* the supreme court determined that the municipality and the water authority could be held liable for negligent maintenance and operation of a municipal water facility when such negligence proximately causes an outbreak of giardiasis resulting in harm to the persons consuming the water and to the restaurant.[8] However, the supreme court in *Miller* upheld this court's dismissal of those counts of the restaurant's complaint which averred that the City and the Water Authority breached a contract by failing to provide the restaurant with reasonably clean and safe water in exchange for a reasonable fee.

■ Plaintiffs and the Bankerts contend that the supreme court's decision in *Gall II* is dispositive and mandates that we reverse the trial court in this case.[9] We do not agree and find *Gall II* distinguishable from this case. Essential to the supreme court's holding in *Gall II* is its conclusion that water constitutes "goods" under section 2314 of the Pennsylvania Commercial Code, 13 Pa.C.S. § 2314. Section 2314(a) provides that unless modified or

---

**8.** *See* 42 Pa.C.S. § 8542(b)(5) for exception to governmental immunity based upon a dangerous condition of utility service facilities.

**9.** Plaintiffs and the Bankerts also rely on this court's decision in *Turner v. Martz,* 42 Pa.Commonwealth Ct. 328, 401 A.2d 585 (1979). However, we note that this case was decided after the supreme court's decision in *Ayala,* but prior to the enactment of both the Political Subdivision Tort Claims Act and the local government immunity provisions at 42 Pa.C.S. §§ 8541–8564.

excluded, a warranty that goods sold shall be merchantable is implied in the contract of sale if the seller is a merchant with respect to goods of that kind. "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." 13 Pa.C.S. § 2105(a). Based upon its conclusion that water constitutes "goods" under this definition, the supreme court determined that "[t]he Galls' complaint states causes of action that are cognizable under ...the implied warranty of merchantability as provided by 13 Pa.Cons.Stat.Ann. § 2314 (Purdon 1984)." *Id.*, 521 Pa. at 77, 555 A.2d at 790.

In contrast, as stated in footnotes 1 and 2, *supra*, Plaintiffs claim that the Township breached a contractual duty by failing to perform necessary soil tests, failing to correctly analyze soil conditions, improperly issuing a sewage permit, and improperly designing the sewage disposal system. The Bankerts assert that the Township and Brown impliedly warranted that the lots in question, and the soil in particular, were suitable for on-site sewage disposal systems. However, neither the Bankerts nor Plaintiffs contend that the Township or Brown sold "goods" impliedly warranted to be merchantable under the Pennsylvania Commercial Code. Because the Township and Brown provided services, rather than goods, to the Bankerts and Plaintiffs, we hold that the trial court correctly found the Township and Brown were immune from suit pursuant to 42 Pa.C.S. §§ 8541–8564.

Accordingly, we affirm.

## ORDER

AND NOW, June 9, 1989, the order of the Court of Common Pleas of York County in the above-captioned matters is affirmed.