625 A.2d 1297

William D. SIMS, Administrator of the Estate
of William Henry Sims, Deceased, and
William D. Sims, in his own right,

v.

SILVER SPRINGS–MARTIN LUTHER SCHOOL, Lutheran
Home at Germantown, Diane Gallagher, Frank J. Whit-
comb, Sr., Colonial School District, Appellants.

David M. Nagle, Jeanne Marie Epps,
and Township of Whitemarsh.

William D. SIMS, Administrator of the Estate of
William Henry Sims, Deceased, and William
D. Sims, in his own right, Appellant,

v.

SILVER SPRINGS–MARTIN LUTHER SCHOOL, Lutheran
Home at Germantown, Diane Gallagher, Frank J. Whitcomb,
Sr., Colonial School District, David M. Nagle, Jeanne Marie
Epps, and Township of Whitemarsh, Appellees.

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1992.

Decided May 21, 1993.

620

Larry Glass, for appellant William D. Sims.

George F. Dale, for appellant Colonial School Dist.

Audrey L. Jacobsen, for appellees Whitemarsh Tp., David M. Nagle and Jeanne Marie Epps.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

William D. Sims (Sims), in his own right, and as the administrator of the estate of William Henry Sims, deceased, and the Colonial School District (Colonial) appeal a grant of summary judgment by the Court of Common Pleas of Montgomery County (trial court) in favor of Whitemarsh Township (Whitemarsh). We affirm.

On April 27, 1984, William Henry Sims (decedent), a minor, was taken to a recreational swim by employees of the Silver-Springs Martin Luther King Home. Tragically, the decedent drowned. At the time of the accident, Whitemarsh was using the pool which was owned by Colonial, pursuant to a contract between Whitemarsh and Colonial.

Suit was instituted by Sims, and after the pleadings were closed and following the completion of discovery, Defendants Whitemarsh, Epps and Nagle filed motions for summary judgment. Whitemarsh claimed that no genuine issue of material fact existed, and that Whitemarsh was immune from liability pursuant to what is commonly called the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. §§ 8541–8564. The trial court granted summary judgment in favor of Whitemarsh, but denied the motions for summary judgment filed by Epps and Nagle.[1] Both Sims and Colonial filed timely appeals to this court.[2]

1. The portion of the order denying the motions of Epps and Nagle, the two lifeguards on duty that night, for summary judgment is not before us.

2. The two appeals have been consolidated for our review.

■ On appeal, Sims and Colonial raise the following issues: 1) whether the trial court erred in concluding that Whitemarsh was not in "possession" of the pool, at the time of the accident, so as to be subject to liability under the real estate exception found at Section 8542(b)(3); 2) whether there are material issues of fact in dispute; 3) whether the trial court erred in holding that Whitemarsh is not solely liable or jointly liable with Colonial pursuant to the contract between the two; and 4) whether the trial court erred by holding that decedent was not a third party beneficiary of the contract between Colonial and Whitemarsh.[3]

■ Pa. R.C.P. No. 1035(b), provides that summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions of fact, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). In ruling on a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.*

In the instant case, all parties agree that Whitemarsh is a local agency, and as such is immune from liability unless one of the exceptions under section 8542(b) of the Act applies.

Both Colonial and Sims argue that Whitemarsh was in possession of the pool at the time of the accident, and therefore, that the real estate exception applies. The real estate exception, 42 Pa.C.S. § 8542(b), provides:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . . .

(3) Real Property.—The care custody or control of real property *in the possession of the local agency,* except that

---

**3.** Our scope of review, where summary judgment has been granted, is limited to determining whether the trial court committed an error of law or abused its discretion. *Grim v. Borough of Boyertown,* 141 Pa. Commonwealth Ct. 427, 595 A.2d 775 (1991).

the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on property in the possession of the local agency. (Emphasis added.)

■ When construing this section it must be recognized that it represents an exception to the absolute rule of governmental immunity in 42 Pa.C.S. § 8541, and that § 8542(b)(3) is to be interpreted narrowly. *Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983).

## I. WAS WHITEMARSH IN POSSESSION?

■ On the issue of possession, it is undisputed that Whitemarsh was using the pool pursuant to a contract with Colonial, and that Whitemarsh, when using the pool, provided its own lifeguards. Whitemarsh argues in support of its claim that it was not in possession, that the pool was not located in Whitemarsh Township, that Whitemarsh did not own the pool, maintain the pool, nor was it responsible for regular repairs to the pool, and that the fact that Whitemarsh had limited use of the pool was not sufficient to constitute possession so as to bring Whitemarsh under the provisions of § 8542(b)(3).

We have held in the past that having limited control or merely occupying premises for a limited period of time is not sufficient to impose liability pursuant to § 8542(b)(3). *See York Redevelopment Authority v. Keener*, 101 Pa. Commonwealth Ct. 464, 516 A.2d 832 (1986) (action of city employee in inspecting property, showing property to buyer and overseeing renovation is not "possession" of property.); *Prescott v. Philadelphia Housing Authority*, 124 Pa. Commonwealth Ct. 124, 555 A.2d 305 (1989) (the Philadelphia Housing Authority's control of real property owned by third parties did not constitute possession as the term is used in the real property exception); *Walsh by Walsh v. Camelot Bristol Co. Inc.*, 102 Pa. Commonwealth Ct. 76, 517 A.2d 577 (1986) (a volunteer fire company in temporary occupancy of a privately owned

building for the purpose of extinguishing a fire does not constitute "possession" for the purposes of § 8542(b)(3)).

On the day of decedent's death, Whitemarsh was responsible for opening and closing the pool, collecting any monies and supervising the patrons. However, Whitemarsh did not own or maintain the pool, nor was Whitemarsh responsible for regular repairs to the pool. Further, Whitemarsh had no input into the design of the pool and did not control the illumination of the pool. The design and layout of the pool along with the illumination provided were controlled by Colonial. In short, Whitemarsh was merely occupying the pool, at the time of decedent's death, and we therefore conclude Whitemarsh was not in possession of the pool at the time of the accident for the purposes of § 8542(b)(3).

## II. WERE MATERIAL FACTS IN DISPUTE?

Sims argues that a genuine issue of material fact is in dispute, namely what caused the decedent to drown. Sims proffered evidence that the drowning was caused by a combination of defective pool design, insufficient lighting, absence of a lifeline and negligent supervision by the lifeguards.

Sims makes two allegations of unsafe conditions or defects in the property itself. First, he alleges that the slope of the pool was defective, and second, that the lighting was insufficient. We note that neither of these allegations aver that Whitemarsh was able to control these conditions at the time of the accident. Sims also alleges that the removal of a lifeline and negligent supervision by the lifeguards contributed to his son's death. These are not allegations of a defect of the property itself.

However, because we have held that Whitemarsh was not in possession, regardless of the cause of decedent's death, Whitemarsh cannot be held liable. If a fact finder were to find that negligent supervision was the cause of decedent's death, Whitemarsh would not be liable. Negligent supervision has repeatedly been determined to be insufficient to impose liability under the exceptions to governmental immunity. *See*

*Prescott v. Philadelphia Housing Authority,* 124 Pa. Commonwealth Ct. 124, 555 A.2d 305 (1989); *Rhoads v. Lancaster Parking Authority,* 103 Pa. Commonwealth Ct. 303, 520 A.2d 122 (1987), *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987); *Frank v. Southeastern Pennsylvania Transportation Authority,* 96 Pa. Commonwealth Ct. 221, 506 A.2d 1015 (1986).

If the fact finder were to determine that a defective condition of the pool design or insufficient lighting causing the drowning, Whitemarsh would nonetheless be immune and not held liable because as previously discussed, the real estate exception does not apply. Therefore, there is no material issue of fact in dispute which defeats Whitemarsh's motion for summary judgment.

## III. IS WHITEMARSH LIABLE OVER TO COLONIAL?

Colonial argues that whether Whitemarsh is found not to be in possession for purposes of exceptions to the Tort Claims Act, it is nevertheless liable over to Colonial pursuant to the contract between the two parties.

Colonial relies on language in the contract which defines the relationship between Colonial and Whitemarsh with respect to damages and liability. The contract in its entirety provides as follows:

### JOINT AGREEMENT FOR THE USE OF EACH OTHERS FACILITIES

A. There is an acceptance on the part of both organizations that the facilities of each being public facilities, return the most to the public for its tax investment when the facilities are most properly used, and each pledges its cooperation to the other to further this end.

1. Programs of the Whitemarsh Township Park and Recreation Department are recognized as school related programs.

2. Colonial School District will make available indoor and outdoor school facilities when not in conflict with school activities at no cost to the township unless a charge for admission is made.

3. Whitemarsh Township Park and Recreation Board will make available indoor and outdoor recreation facilities when not in conflict with Recreation Department programs at no cost to the School District.

4. Park and Recreation Department will provide adequate leadership for all recreation activities conducted in school facilities.

5. School District will provide adequate leadership for all school activities conducted on Park and Recreation Department facilities.

6. Where additional leadership, supervision, or other service is necessary by employees of either organization, that extra cost shall be reimbursed by the organization using the facility to that which owns the facility.

7. Both organizations will endeavor to give the greatest possible notice of anticipated use to the other to facilitate scheduling.

8. Each organization assumes responsibility for any damage which occurs while its program is being conducted on the other's facilities and will cause such damage to be repaired as immediately as possible.

B. Both Boards endorse the School–Park concept for the construction of new facilities and each will discuss with the other any new projects that may be able to use this concept to their mutual advantage.

C. Liability provision.

1. The Colonial School District will assume no liability for any injuries, loss of personal property or damage to personal property.

2. The Whitemarsh Park and Recreation Department Board will assume no liability for any injuries, loss of personal property or damage to personal property.

Signed: _____ Attested to: _____

628 

School District

Signed: _____ Date: _____

Witness

Colonial relies specifically on Paragraphs A(4), A(8) and C(1) and C(2). An examination of Paragraph A(8) makes clear that the responsibility being assigned is for damage to the respective facilities.

 Paragraph A(8) provides that each organization will be responsible for any "damage" that occurs. While "damage" is not defined in the contract, Donald Koontz, the former Director of Parks and Recreation for Whitemarsh Township, testified that "damage" referred to physical damage of the facilities, such as a broken window, broken bench or "that type of thing." (Koontz Deposition at 5.) When this is read in conjunction with the final words of the paragraph "will cause such damage to be repaired as immediately as possible," it becomes clear that paragraph A(8) does not contemplate personal injuries, nor does it place liability for such injuries on Whitemarsh.

Paragraphs C(1) and (2) are mutual disclaimers. They indicate the neither party will assume liability for any injuries, loss of personal property or damage to personal property. There is no indication in the disclaimer that Whitemarsh agreed to assume tort liability under the present facts.

 We further observe that none of the eight exceptions of 42 Pa. C.S. § 8542 are contract exceptions. When § 8541 [4] is construed narrowly, as dictated in *Vann*, we reach the conclusion that the legislature never intended for a local agency to be held liable for tort damages under a contract theory. If the legislature had so intended, it would have included an exception dealing specifically with contract actions.

4. 42 Pa. C.S. § 8541 provides:
 Except as otherwise provided in this subchapter, no local agency shall be liable for *any* damages on account of *any* injury to a person or property caused by an act of the local agency or an employee thereof or any other local person. (Emphasis added.)

## IV. WAS DECEDENT A THIRD PARTY BENEFICIARY?

Sims argues that the decedent is a third party beneficiary in the contract between Whitemarsh and Colonial. Sims proffers that when paragraph A(4), placing a duty to provide leadership, and paragraph A(8), assuming responsibility for damages for each other's facilities, are read together, liability to a third party beneficiary is imposed on Whitemarsh.

Our Supreme Court set forth a two part test for determining whether one is an intended third party beneficiary:

(1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'

*Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (1983). Further, we stated that in order for a party to be a third party beneficiary:

it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words ... the obligation to the third party must be created and must affirmatively appear, in the contract itself....

*General State Authority v. Sutter Corporation*, 44 Pa. Commonwealth Ct. 156, 164–65, 403 A.2d 1022, 1026–27 (1979), citing *Spires v. Hanover Fire Insurance Company*, 364 Pa. 52, 56–7, 70 A.2d 828, 830–31 (1950) (footnote omitted).

Sims explains that the word "damage" does not specify whether it encompasses property damage or bodily injury, and therefore, must include both. As stated previously, the term "damage" of paragraph A(8) was not meant to include personal injury.

Finally, this argument ignores the requirement that the parties to the contract must intend to benefit the third

party, and that this must be affirmatively expressed in the contract. The language in the above paragraphs does not show an intention by either Colonial or Whitemarsh to provide decedent, or any other similarly situated person, with the rights of a third party beneficiary. The language in paragraph A(4) places an obligation on Whitemarsh to provide leadership; it states nothing about possible liability to an injured person. Further, the language in paragraph A(8) makes no mention, affirmatively or by implication, of the rights of a third party beneficiary.

The contract between Whitemarsh and Colonial details the rights and liabilities between Whitemarsh and Colonial. The trial court concluded, and we agree, that the contract is devoid of any language that would allow decedent to recover as a third party beneficiary.

After reviewing the record, we find that the trial court did not commit an error of law or abuse its discretion in the grant of summary judgment for Whitemarsh. Accordingly, we affirm.

## ORDER

AND NOW, May 21, 1993, the order of the Common Pleas Court of Montgomery County in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

Where questions of fact remain unresolved, summary judgment is not appropriate. Because I believe that this is the case here, I respectfully dissent.

Sims and Colonial seek to impose liability on Whitemarsh under the real property exception to governmental immunity, arguing that a jury could find both that Whitemarsh had possession and control of the pool at the time of the accident and that a defective condition of the property contributed to

Sims' death.[1] Here, the majority appears to concede that because Sims makes allegations of defects in the property itself, the cause of Sims' drowning presents a jury question. I agree. However, the majority concludes that no material issue of fact is in dispute which would defeat Whitemarsh's motion for summary judgment because, regardless of the cause of Sims' death, the real property exception to governmental immunity does not apply to impose liability on Whitemarsh where Whitemarsh was not in possession of the property at the time of Sims' accident. The majority reasons that if a fact finder were to find that negligent supervision was the cause of Sims' death, Whitemarsh would not be liable because negligent supervision alone is insufficient to impose liability under the real property exception to governmental immunity. If, on the other hand, the fact finder were to determine that a defective condition of the pool design or insufficient lighting caused the drowning, Whitemarsh would, nonetheless, be immune for lack of possession. I cannot agree that, under the circumstances here, the issue of possession can be decided as a matter of law.

The majority bases its determination on the fact that Whitemarsh did not own the pool but was merely occupying the premises for a limited period of time and was not responsible for its regular repairs or maintenance. I recognize that Whitemarsh did not own the property; however, this is not determinative of whether it had possession of the pool at the time of the accident. Possession for purposes of § 8542(b)(3) has not been construed to require ownership; rather, a mere possessory interest is sufficient to expose a local agency to liability under section 8542(b)(3) of the Judicial Code. *Lowman v. Indiana Area School District*, 96 Pa. Commonwealth Ct. 389, 507 A.2d 1270 (1986). Control or occupancy can constitute possession, without regard to ownership. Nevertheless, citing *York Redevelopment Authority v. Keener*, 101 Pa. Commonwealth Ct. 464, 516 A.2d 832 (1986), *Prescott v. Philadelphia Housing Authority*, 124 Pa. Commonwealth Ct.

---

1. Colonial agrees, however, with the trial court that Sims died solely as a result of negligent supervision.

124, 555 A.2d 305 (1989), and *Walsh by Walsh v. Camelot Bristol Co. Inc.*, 102 Pa. Commonwealth Ct. 76, 517 A.2d 577 (1986) as authority, the majority concludes that Whitemarsh's limited control or occupancy of Colonial's property was insufficient to impose liability pursuant to § 8542(b)(3). Although we refused to find that a city or local agency had possession of real property under the circumstances in *Keener, Prescott* and *Walsh,* I do not feel that these cases, relied on by the majority, compare to the present situation.

In *Keener,* a subcontractor was injured when he fell through the floor while renovating a property purchased "as is" as part of a city redevelopment plan. At the time of the accident, legal title and possession of the property had been transferred from the Redevelopment Authority to the current owners, who had hired the subcontractor. However, prior to the sale, a city employee had performed various services in connection with the property by conducting inspections, showing the property to prospective buyers and overseeing preliminary renovations. We determined that to consider this extremely limited, past involvement with the property as "possession" would defy any notion of the term.

In *Prescott,* suit was filed against the Philadelphia Housing Authority on behalf of a child who suffered lead poisoning after ingesting lead-based paint from the walls of his apartment. The apartment was one rented to persons eligible for housing assistance under the Federal Housing Assistance Program. In accordance with a line of cases refusing to interpret possession, for purposes of the exception to government immunity, to include control exercised by a municipality or local agency solely through its regulatory and enforcement powers, we held that the Housing Authority did not assume possession of the apartment based on its responsibility under Federal regulations connected with the housing program. *See also Mentzer v. Ognibene,* 126 Pa. Commonwealth Ct. 178, 559 A.2d 79 (1989), *appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989); *Kline v. Pennsylvania Mines Corp.,* 120 Pa. Commonwealth Ct. 7, 547 A.2d 1276 (1988); *Buffalini v. Shrader,* 112 Pa. Commonwealth Ct. 228, 535 A.2d 684 (1987).

*Walsh* is even farther afield. In *Walsh*, a fireman, injured while combatting a blaze, alleged that the volunteer fire company negligently ordered him to remain in the building without proper safety equipment. We held that the fire company's temporary occupancy of a privately owned building for the limited purpose of extinguishing a fire did not constitute possession of that property for the purposes of section 8542(b)(3).

This case is easily distinguishable from each of these opinions. Unlike the city in *Keener*, Whitemarsh's use of the property here was not a past event; Whitemarsh was actually occupying and supervising the premises when the drowning occurred. Moreover, Whitemarsh's alleged possession of the pool had no connection with its regulatory or enforcement responsibilities, as was the case in *Prescott*. Finally, Whitemarsh's use of Colonial's pool does not compare with the firefighter's temporary presence on the property in *Walsh*. This was not a one-time occupation of the facility for the benefit of the owner but rather, virtually from the time that the pool was constructed, was a regularly scheduled takeover of the premises, during which Whitemarsh received the financial benefit of its use. In addition, absent from all the cases relied on by the majority, is the sort of continuing written agreement that existed between Whitemarsh and Colonial, pursuant to which Whitemarsh was using the pool at the time of Sim's accident. The existence of the contract makes this case more akin to *Rhoads v. Lancaster Parking Authority*, 103 Pa. Commonwealth Ct. 303, 520 A.2d 122 (1987) than to any of the opinions previously discussed.

In *Rhoads*, a patron of a Municipal Parking Authority garage was assaulted on the property and filed a complaint against the Authority and the city for failing to provide adequate security in the garage. Rhoads alleged that both the city and the Authority possessed the garage; however, the trial court granted summary judgment in favor of the city on grounds that it had relinquished care, custody and control of the garage to the Authority. We stated that summary judg-

ment on this ground was improper because questions of material fact on this issue existed where evidence showed that the city had a leasehold interest in the parking garage and exercised some degree of control over its operations.

Here too, Whitemarsh had a contractual interest in the periodic use of Colonial's property and exercised a degree of control over it at those times. On the evening of Sims' drowning, Whitemarsh was using the property pursuant to the written contract between Whitemarsh and Colonial. The contract provided that the parties could use each others' facilities under specific conditions which made each party accountable for its own actions and activities while using the other party's property. Therefore, although Whitemarsh may not have owned the property, I feel that Whitemarsh acquired liability by contracting for possession and control of the pool at specific times. To effectuate this contractual shift in responsibility, Whitemarsh assumed the obligation for any damage which occurred during the time that it conducted its program at the pool and provided pool personnel, including lifeguards, to open and close the premises and supervise the facility. No one but Whitemarsh had the right to use the facility during these periods, and Whitemarsh charged an admission fee to those persons who came to swim, no portion of which went to Colonial.

In considering a motion for summary judgment, all doubts must be resolved in favor of the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). At the very least, Sims and Colonial present evidence showing that Whitemarsh had a contractual interest in the regularly ongoing, periodic use of the pool and exercised some degree of control over its operations during those periods. I feel that this evidence is sufficient to raise questions of material fact on the issue of whether Whitemarsh possessed the pool at the time of the accident, making summary judgment inappropriate. Accordingly, on this basis, I would reverse and remand for trial.