**Lucy M. MATARAZZO and Vincent Matarazzo, Appellants**

**v.**

**MILLERS MUTUAL GROUP, INC., a Pennsylvania Corporation, and the Municipal Authority of Westmoreland County.**

Commonwealth Court of Pennsylvania.

Argued May 9, 2007.

Decided July 2, 2007.

As Amended Sept. 17, 2007.

---

Lawrence F. Becker, III, Greensburg, for appellants.

Anthony J. Vigilante, Lower Burrell, for appellee, Municipal Authority of Westmoreland County.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Lucy M. Matarazzo and Vincent Matarazzo (Plaintiffs) appeal from the February 17, 2006, order of the Court of Common Pleas of Westmoreland County (trial court) granting the preliminary objections in the nature of a demurrer filed by the Municipal Authority of Westmoreland County (Authority) and dismissing Plaintiffs' complaint as to the Authority.[1] We affirm.

1. Count II of the complaint sets forth a claim against Millers Mutual Group, Inc., a Pennsylvania Corporation (Millers), the other named defendant in this case. However, there is no dispute that, as of this time, Millers has not been served with the complaint in compliance

On August 23, 2005, Plaintiffs filed a complaint against the Authority, asserting, in part, the following facts. In June of 2003, Plaintiffs directed the Authority to turn off the water to their vacant property, which is located at 402 Wood Street. An Authority employee advised Lucy Matarazzo that the water would be turned off. Thereafter, the Authority provided Plaintiffs with a bill indicating that it was a final statement. In reliance upon the employee's representation and the final billing statement, Plaintiffs reasonably believed that the water was turned off. The Authority did not turn off the water to the property, and, as a result, during extremely cold weather, the pipes in the home froze and broke, flooding the home and damaging the structure and Plaintiffs' personal property. (Complaint, ¶¶ 1–18.) Count I of the complaint, captioned as a claim of detrimental reliance against the Authority, reasserts the above facts and alleges that the injuries to Plaintiffs' property resulted directly from their reasonable reliance on the Authority's assurance that the water would be turned off. (Complaint, ¶¶ 22–30.) Plaintiffs seek damages in excess of thirty thousand dollars ($30,000).

The Authority filed preliminary objections in the nature of a demurrer, asserting immunity under the statute commonly known as the Political Subdivisions Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. Specifically, the Authority argued that the exception to immunity set forth at section 8542(b)(5) of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(5) (utility service facilities) does not apply because the water pipes that froze are not owned by the Authority or located within a right-of-way owned by the Authority.[2] Plaintiffs contended that they have pled a cause of action based upon a theory of detrimental reliance, or promissory estoppel, and, therefore, the doctrine of governmental immunity does not apply.

The trial court concluded that the damages Plaintiffs seek are in the nature of tort damages. The trial court relied upon our decision in *Sims v. Silver Springs–Martin Luther School*, 155 Pa.Cmwlth. 619, 625 A.2d 1297, *appeal discontinued*, 537 Pa. 636, 642 A.2d 489 (1993), which held that the legislature never intended for a local agency to be held liable for tort damages under a contract theory. Accordingly, the trial court granted the Authority's preliminary objections and dismissed Plaintiffs' complaint as to the Authority.

On appeal to this court,[3] Plaintiffs argue that the trial court erred in granting the Authority's preliminary objections because Plaintiffs pled a cause of action for detrimental reliance, a claim that is outside the scope of governmental immunity provided by the Tort Claims Act.

with the Pennsylvania Rules of Civil Procedure and, therefore, is not a party in the present action. For that reason, the order dismissing the complaint as to the Authority is not an interlocutory order.

**2.** Section 8542(b)(5) of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(5), provides in part that a local agency shall be liable for damages that result from a dangerous condition of the utility service facilities owned by the local agency and located within the local agency's rights-of-way.

**3.** Our scope of review on appeal from an order sustaining preliminary objections is limited to determining whether the trial court committed legal error or abused its discretion. *Cowell v. Commonwealth, Department of Transportation*, 883 A.2d 705 (Pa.Cmwlth. 2005). When considering preliminary objections, we accept as true all well pled facts and all inferences reasonably deducible therefrom. *Id.* Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief; any doubt must be resolved in favor of overruling the demurrer. *Id.*

Detrimental reliance is another name for promissory estoppel. *Travers v. Cameron County School District*, 117 Pa. Cmwlth. 606, 544 A.2d 547 (1988). Under this theory, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcing the promise. Restatement (Second) Contracts § 90(1) (1981). In effect, the detrimental reliance of the promisee creates the consideration necessary for the formation of a contract, the breach of which is actionable. *Travers*. *See also Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606 (2000) (holding that the doctrine of promissory estoppel sounds in contract law and, like other contract actions, is subject to the four-year statute of limitations set forth at 42 Pa.C.S. § 5525). The doctrine of promissory estoppel is the law in Pennsylvania. *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 636 A.2d 156 (1994).

In response to the Authority's assertion of governmental immunity, Plaintiffs rely on *Travers* and *Herzfeld v. City of Philadelphia*, No. 84–5014, 1985 WL 2700, 1985 U.S. Dist. LEXIS 16020 (E.D.Pa. September 13, 1985), as cases that allow for a suit against a governmental agency even where the claim does not fall within an exception to immunity under the Tort Claims Act. In *Travers*, the school district hired James E. Travers (Travers) for a teaching position. Upon accepting the job, Travers moved from Ohio to Pennsylvania. After school started, the school district learned that Travers did not have the proper teaching certification. The school district informed Travers that he had until the beginning of the second semester to acquire the certification and that failure to do so would result in the cancellation of his contract. Because classes necessary to obtain certification were already underway, Travers was unable to obtain certification.

Travers filed a complaint against the school district, alleging in part that the district, through its agents/employees, had assured him when it offered him the position that he was qualified for the position and had promised Travers that it would prepare and submit the requisite Pennsylvania certification application if Travers accepted the position. Travers alleged that the school district failed to do so, breaking its promise, that he relied on their promises and inducements and that he suffered irreparable financial harm, which was foreseeable to the school district.

The trial court dismissed Travers' action for failure to state a cause of action. Our court reversed, holding that the allegations and inferences were sufficient to state a cause of action based on promissory estoppel.[4] Plaintiffs here assert that the holding in *Travers* establishes that the immunity normally afforded to a governmental entity may not be available when reliance upon the governmental agency's actions and words induces another into acting or forbearing from acting to that person's detriment.

*Herzfeld* involved a property owner, Gerald Herzfeld (Herzfeld), who was notified by letter from the assistant city solicitor that a hearing would be held on June 13, 1984, during which the city would seek an order to demolish his property. The building was demolished three weeks before the scheduled hearing, and Herzfeld filed suit in the district court against the

---

4. The court in *Travers* stated that it may be inferred from the allegations in Travers' complaint that, based on the school district's promise, Travers discontinued any further job search and forbore from obtaining the requisite certification himself.

city, the assistant city solicitor and other defendants, asserting a variety of claims under federal and state law. The case was tried before a jury, which found in Herzfeld's favor only on his theory of detrimental reliance and awarded damages in the amount of $562,000. In its ruling on post-trial motions, the district court concluded that Pennsylvania courts have held that the theory of promissory estoppel may be applied against governmental entities. Plaintiffs here concede that this court is not bound by the decision in *Herzfeld*, but they argue that it persuasively suggests that Pennsylvania law supports their claim for detrimental reliance against the Authority.

The Authority asserts that Plaintiffs are attempting to transform a negligence action into a contract action in an attempt to avoid the defense of governmental immunity. The Authority distinguishes *Travers* on the grounds that the facts of that case involved a negotiated employment situation that could not support a cause of action in tort. The Authority also asserts that the cases relied upon by the court in *Herzfeld* do not involve tort actions pled as actions in assumpsit supported by promissory estoppel, thus diminishing the persuasiveness of the decision in *Herzfeld*. The Authority maintains that, in contrast to the facts in *Travers* and *Herzfeld*, the facts of this case do not support a conclusion that a contract was formed or even contemplated by the parties.

The Authority points out that when it receives a request to turn off water, it may not determine whether it wishes to do so and then negotiate a mutually agreeable price for terminating service. Instead, it must turn off the water upon a customer's request.

The Authority characterizes the Plaintiffs' allegations as stating that: Plaintiffs called upon the Authority to perform a pre-existing duty (turning off the water); the Authority breached that duty by failing to shut off the water; and the Authority's breach of that duty resulted in frozen pipes and damages to Plaintiffs' building. The Authority notes that duty, breach, causation and harm are the essential elements of a cause of action in negligence, not contract, and the Authority argues that, in a situation where a real contract would not have arisen, it is improper to plead a quasi-contract into existence in a complaint.

More important, the Authority observes that Pennsylvania courts have consistently held that a plaintiff may not avoid the defense of governmental immunity by couching a claim for the recovery of tort damages under a breach of contract theory. For example, in *Gilius v. Board of Supervisors of Fairview Township*, 122 Pa.Cmwlth. 371, 552 A.2d 327 (1988), *appeal denied*, 523 Pa. 633, 564 A.2d 1262 (1989), the court rejected an attempt by landowners to recover damages on a cause of action for breach of an implied warranty, reasoning as follows:

> These counts clearly sound in tort, because in essence they charge that the Board, acting through its agent, Mr. Hartman, was negligent in that the latter failed to perform a percolation test in a competent non-negligent manner. This court has previously rejected attempts to avoid the immunity provisions of Subchapter C by alleging causes of action which sound in tort but are fashioned as assumpsit counts. .... To allow recovery of damages from the appellees for breach of implied warranty after refusing recovery for negligence would completely defeat the legislative grant of immunity.

*Id.* at 330 (citation omitted). *See also Sims*, 625 A.2d at 1302 ("[T]he legislature never intended for a local agency to be

held liable for tort damages under a contract theory."); *Bendas v. Upper Saucon Township*, 127 Pa.Cmwlth. 378, 561 A.2d 1290, 1293 (1989) ("Appellants' assumpsit count sounds in tort as Appellant essentially avers that the Township negligently issued the permit in question. Previous attempts to disguise tort causes of action not falling within the exceptions to governmental immunity as assumpsit counts . . . have been rejected by this Court."); *Schreck v. North Codorus Township*, 126 Pa.Cmwlth. 407, 559 A.2d 1018, 1022–23 (1989) ("This court has previously rejected attempts to circumvent the above immunity provisions of 42 Pa.C.S. §§ 8541–8564 by fashioning a cause of action in assumpsit which is in reality nothing more than a cause of action sounding in tort."), *appeal dismissed,* 526 Pa. 266, 585 A.2d 464 (1991); *Silkowski by Silkowski v. Hacker,* 95 Pa.Cmwlth. 226, 504 A.2d 995, 997 (1986) ("Appellants' argument, while an ingenious attempt to avoid the immunity provisions of the Act, fails to do so. Their claim against the County as an additional defendant clearly sounds in tort . . . ."); *cf. McKeesport Municipal Water Authority v. McCloskey,* 690 A.2d 766 (Pa.Cmwlth.) (permitting suit against the local agency under the Pennsylvania Uniform Commercial Code, 13 Pa. C.S. §§ 1101–9507, based on the agency's failure to supply potable water under the terms of a contract in breach of the implied warranty of merchantability), *appeal denied,* 549 Pa. 708, 700 A.2d 445 (1997).

■ Courts are similarly reluctant to permit a contract action to be converted into a tort action merely by alleging negligent conduct. In *Bash v. Bell Telephone Company of Pennsylvania,* 411 Pa.Super.

347, 601 A.2d 825 (1992), the court explained that tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual agreements between particular parties. The court further reasoned that to permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. *See also Yocca v. Pittsburgh Steelers Sports, Inc.,* 806 A.2d 936 (Pa. Cmwlth.2002), *rev'd on other grounds,* 578 Pa. 479, 854 A.2d 425 (2004), and *Redevelopment Authority of Cambria County v. International Insurance Company,* 454 Pa.Super. 374, 685 A.2d 581 (1996), *appeal denied,* 548 Pa. 649, 695 A.2d 787 (1997), (relying on *Bash* to distinguish contract and tort actions).

■ Thus, the dispositive question before us is whether the trial court properly characterized Plaintiffs' claims as a tort action. We agree with the trial court that Plaintiffs' allegations can be fairly characterized as assertions that the Authority, through its employees, breached the duty of care that it owes to all of its customers to provide service in a competent and careful manner by failing to ensure that Plaintiffs' request to cancel service to their property was acted upon.[5] Thus, Plaintiffs claim sounds in tort, and there is no dispute that the facts do not fall within an exception to governmental immunity.

Accordingly, we affirm.

### ORDER

AND NOW, this 2nd day of July, 2007, the order of the Court of Common Pleas of

---

5. Plaintiffs' complaint asserts that the Authority is a local agency, "organized pursuant to applicable statute." (Complaint, ¶ 4.) If the Authority is organized pursuant to the Municipality Authorities Act, 53 Pa.C.S. §§ 5601–5623, that statute provides support for the Authority's argument, in that the stated purpose and intent of that act is "to benefit *the people of the Commonwealth* by, among other things, increasing their commerce, health, safety and prosperity. . . ." 53 Pa.C.S. § 5607(b)(2) (emphasis added).

Westmoreland County, dated February 17, 2006, is hereby affirmed.

DISSENTING OPINION BY Judge LEAVITT.

I respectfully dissent. The majority sustains the trial court's dismissal of the complaint even though the trial court held that the complaint stated a claim for promissory estoppel. It is impossible to reconcile the dismissal of a complaint with the legal conclusion that the dismissed complaint states a cause of action.

The doctrine of promissory estoppel allows a party to enforce a promise even though that promise is not supported by consideration. *Crouse v. Cyclops Industries*, 560 Pa. 394, 402, 745 A.2d 606, 610 (2000). To establish promissory estoppel, the plaintiff must prove that: (1) the promisor made a promise that would reasonably be expected to induce action *or forbearance* on the part of the promisee; (2) the promisee actually took action or *refrained from taking action* in reliance on the promise; and (3) injustice can be avoided by enforcing the promise. Id. at 403, 745 A.2d at 610 (emphasis added). This Court has elaborated that unlike equitable estoppel, which is wholly a defensive doctrine, promissory estoppel can sustain an action brought to remedy the injustice that results from a promise not kept. We explained as follows:

> Detrimental reliance is another name for promissory estoppel. *Rinehimer v. Luzerne County Community College*, 372 Pa. Superior Ct. 480, 539 A.2d 1298 (1988). Promissory estoppel is an outgrowth of equitable estoppel but, unlike equitable estoppel, promissory estoppel may serve as an independent cause of action. *Paul v. Lankenau Hospital*, 375 Pa. Superior Ct. 1, 543 A.2d 1148 (1988). Pennsylvania has long recognized promissory estoppel as a vehicle by which a

promise may be enforced in order to remedy an injustice. *See Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938).

*Travers v. Cameron County School District*, 117 Pa.Cmwlth. 606, 544 A.2d 547, 550 (1988) (footnote omitted) (holding that a complaint containing the elements of promissory estoppel cannot be dismissed at the preliminary objection stage).

Here, the trial court found that the Matarazzos pled each element of promissory estoppel. They relied on the promise of the Authority to shut off their water and, as a result, refrained from having the water pipes drained or from hiring someone else to turn off their water. The trial explained why these allegations stated a cause of action in promissory estoppel, stating:

> What we have here is a promise by the Authority to turn off the water. It was a promise that the Authority should have known would be relied upon by the plaintiffs. The plaintiffs did rely upon this promise of the Authority. As a result of their reliance they suffered harm in the way of damages to the house. *These allegations make out a case of promissory estoppel* and allow the circumstances to act as a substitute for consideration, thus making the Authority's promise to turn off the water an enforceable one. The promise was breached and as a result of the breach the plaintiffs suffered damages.

Trial Court Opinion at 4 (emphasis added). The trial court also acknowledged that governmental immunity does not shield a local agency from an action brought under a theory of promissory estoppel. *See Ervin v. City of Pittsburgh*, 339 Pa. 241, 250, 14 A.2d 297, 301 (1940) (acknowledging the well established principle that municipalities are not immune from estoppel). In spite of making each legal conclusion in favor of the Matarazzos, the trial court

dismissed their complaint, leaving them without the means "to remedy an injustice." *Travers,* 544 A.2d at 550.

The trial court issued this startling order because it believed that the complaint was actually a "disguised" negligence action, and the Authority is protected from negligence claims by governmental immunity. There are several flaws to the trial court's "disguise" theory.

First, the "disguise" theory fails on the facts as pled in the complaint. The relationship between the Matarazzos and the Authority was a contractual one, as is the case in any relationship between a utility and its customers. *See, e.g., West Penn Power Co. v. Nationwide Mutual Insurance Co.,* 209 Pa.Super. 509, 228 A.2d 218 (1967) (wherein the utility initiated a contract action to pursue a customer that had been underbilled for electrical service for additional payments). Their relationship was not one based upon the social policy imposed by the common law of tort. This is not a case where, for example, one of the Authority's vehicles was negligently operated by one of its employees and caused damage to another person on the road. Here, the Authority made a promise in the course of its business relationship with its customers, the Matarazzos, that it did not fulfill.

Second, negligence is not pleaded in the complaint. The Matarazzos' complaint does not characterize the Authority's failure to turn off their water as either negligent or intentional. Indeed, in promissory estoppel it matters not why the promisor has failed to deliver on its promise. The failure to deliver can be the result of either intentional or negligent conduct. The reason for the breach of promise is no more significant than it is in any breach of contract action.

Third, promissory estoppel contains elements of both negligence and contract. The commentators explain that the key element of promissory estoppel, reliance, is not "peculiar to the law of contracts." RE-STATEMENT (SECOND) OF CONTRACTS, § 90 cmt. a (1981). Reliance is also a "feature of numerous rules in the law of negligence, deceit and restitution." Id. Following the trial court's logic, any complaint, no matter how it is framed, must be treated as a tort claim if any element of the legal theory of the action contains a "feature" also found in the law of negligence.

The majority points to precedent where the facts in a complaint pled negligence but called it something else in an effort to circumvent sovereign immunity. It cites: *Gilius v. Board of Supervisors of Fairview Township,* 122 Pa.Cmwlth. 371, 552 A.2d 327 (1988) (holding that a breach of implied warranty did not lie where a township employee negligently performed a soil percolation test); *Bendas v. Upper Saucon Township,* 127 Pa.Cmwlth. 378, 561 A.2d 1290 (1989) (holding that negligent issuance of permit was not redressable in assumpsit); *Schreck v. North Codorus Township,* 126 Pa.Cmwlth. 407, 559 A.2d 1018 (1989) (holding that a breach of implied warranty did not lie where township failed to perform soil tests and properly design a sewage treatment disposal system); *Silkowski by Silkowski v. Hacker,* 95 Pa.Cmwlth. 226, 504 A.2d 995 (1986) (holding that negligent supervision was not redressable as a third-party contract beneficiary claim). In each of these cases, we refused to allow the plaintiffs to circumvent the doctrine of sovereign immunity by calling their tort claim by another name. However, these cases are distinguishable.

First, in each case cited by the majority, the defendant was a local agency that acted in a governmental, not a proprietary,

capacity.[1] As conceded by the majority, governmental immunity does not shield a water authority from the tort-like claim for breach of implied warranty of merchantability to its customer because it acts in a proprietary capacity. *McKeesport Municipal Water Authority v. McCloskey*, 690 A.2d 766 (Pa.Cmwlth.1997). Similarly, governmental immunity does not protect the Authority from a claim of promissory estoppel.

Second, none of the cases identified by the majority involved the making of a promise. Further, in none of these cases was it found by the trial court, or by this Court on appeal, that the complaint in question stated a claim in contract or in breach of implied warranty. The only claim stated in the complaint was one of negligence. By contrast, here, the trial court found that the facts as pled stated a claim in promissory estoppel.

The party guilty of "disguise" in this case is the Authority. It tries to disguise its discrete duty to honor a single promise to specific individuals as the general duty created under the common law of tort to conduct itself in accordance with the reasonable man standard.[2] To make its disguise work, the Authority asserts, rather cheerfully, that it was "careless" and negligently failed in its duty of care to the Matarazzos, who happen to be members of the public as well as being customers of the Authority.[3] However, these assertions of the Authority lack any basis in the complaint. This is also true with respect to another "fact" relied upon by the majority, *i.e.*, the water pipes that froze were not located within a right-of-way owned by the Authority. Majority Opinion at 691.

In any pleading, the same set of facts can support recovery under several legal theories. This is why complaints have multiple counts, each of which may provide a different avenue to relief and a different remedy. For example, negligence entitles successful plaintiffs to compensatory and special damages, including punitive damages. By contrast, in promissory estoppel, damages are "limited as justice requires." *Lobolito*, 562 Pa. at 390 n. 10, 755 A.2d at 1292 n. 10 (relying upon section 90(1) of the RESTATEMENT (SECOND) OF CONTRACTS).[4]

1. However, in *Lobolito, Inc. v. North Pocono School District*, 562 Pa. 380, 755 A.2d 1287 (2000), our Supreme Court held that a promise made in the exercise of a governmental function limited the plaintiff's promissory estoppel to the amount lost as a result of its reliance upon the promise, as opposed to the total value of the contract. Stated otherwise, promissory estoppel may be pursued even when the local agency's promise implicates governmental functions.

2. The difference between a breach of contract claim and a tort claim has been explained by the Pennsylvania Superior Court as follows:

> Although they derive from a common origin, distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.

*Hart v. Arnold*, 884 A.2d 316, 339 (Pa.Super.2005).

3. At a minimum, the Authority should have had to plead that it was negligent before the Matarazzos' action can be found barred by governmental immunity.

4. In promissory estoppel, the remedy is adjusted to suit each case. CORBIN ON CONTRACTS, § 8.8 (1996). The remedy can include (1) money damages measured by the foreseeable injury resulting from non-performance; (2) restitution measured by the promisor's unjust enrichment; (3) reliance damages to reimburse the expenses incurred by the promise; or (4) specific performance. Id. at 26. The remedy sought by the Matarazzos appears to be for money damages for the injury resulting from the Authority's non-performance. The

It is the job of the court to review each count separately on its own merits. If the Matarazzos had filed a complaint with, first, a negligence count and, next, a promissory estoppel count, the trial court could have crossed out the negligence count on the basis of governmental immunity. However, it had to stop there because a promissory estoppel claim against a water authority is not barred by governmental immunity.

To dismiss the complaint at the preliminary objection stage, the majority relies on "facts" asserted by the Authority in briefs, not in the pleading; treats the complaint as stating a negligence claim when it does not; and merges two different legal theories, negligence and promissory estoppel, into one when they are different constructs governed by different rules. The Matarazzos' complaint states a cause of action in promissory estoppel, a point not even challenged by the Authority. Our Supreme Court has directed that a demurrer cannot be sustained in such circumstances. *See* *Lobolito*, 562 Pa. at 390–391, 755 A.2d at 1292–1293 (holding that because developer's complaint against school district pled the elements of promissory estoppel it could not be dismissed at preliminary objection stage).

For these reasons, I would reverse the trial court and remand the case for further proceedings.

Judge COLINS joins in the dissent.

amount of these damages would be "limited as justice requires." *Lobolito*, 562 Pa. at 390 n. 10, 755 A.2d at 1292 n. 10.