United Brokers Mortgage Company, Plaintiff *v.* Fidelity Philadelphia Trust Company, as Agent, Individually and as Agent for The Public School Employes Retirement Board and the State Employes Retirement Board and Public School Employees Retirement Board of the Commonwealth of Pennsylvania and Public State Employes Retirement Board of the Commonwealth of Pennsylvania, Defendants.

Argued June 7, 1976, before President Judge Bowman and Judges CRUMLISH, JR., WILKINSON, JR., MENCER and BLATT. Judges KRAMER and ROGERS did not participate.

*Lawrence D. Levin,* with him *Bank, Shor, Levin &, Weiss, Steven R. Waxman* and *Bolger & Picker,* for plaintiff.

*Allen C. Warshaw,* Deputy Attorney General, with him *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendant, Commonwealth.

*H. Robert Fiebach,* with him *Alan B. Rubenstein,* and, of counsel, *Wolf, Block, Schorr and Solis-Cohen,* for defendant Fidelity Philadelphia Trust Company.

OPINION BY PRESIDENT JUDGE BOWMAN, September 9, 1976:

This matter is before us on preliminary objections to a complaint in assumpsit and trespass filed by

United Brokers' Mortgage Company (plaintiff). The named defendants are Fidelity Philadelphia Trust Company (Fidelity) individually and as agent of the other defendants, the Public School Employees' Retirement Board, and the State Employees' Retirement Board (collectively referred to herein as Funds).

The well pleaded factual averments of the complaint, which we accept as true for present purposes, disclose that by written contracts Fidelity is an agent for the Funds for the limited purpose of selecting and acquiring federally protected mortgages as investments for said Funds. The agency relationship is strictly controlled as the contracts between Fidelity and the Funds set forth detailed criteria for selection of mortgages and require the approval of the Funds for each specific investment. Subsequently, Fidelity as provided by the aforesaid agency contracts with the Funds, entered into several purchasing and servicing agreements (Agreements) with plaintiff, whereby Fidelity in its discretion could purchase mortgages from plaintiff and plaintiff would service said mortgages.

The dispute between the parties culminating in this litigation arose as a result of difficulties plaintiff experienced with the Federal Housing Administration (FHA), and its ultimate loss of certification as an approved FHA mortgagee. In apparent anticipation of its loss of certification, plaintiff endeavored to assign its interests in the Agreements to other certified mortgage lending companies; plaintiff allegedly entered into several contracts to assign its interest conditioned upon Fidelity's approval, however these contracts were never performed due to Fidelity's refusal to approve the assignments. The Agreements provided for such assignments with the *written consent of Fidelity*. Fidelity in July 1974 gave notice of its in-

tent to terminate the Agreements unless plaintiff was able to cure its alleged default and obtain reinstatement of its FHA certification. Fidelity terminated the Agreements on September 3, 1974.

The gravamen of the complaint is Fidelity's refusal to approve the aforementioned contracts for assignment of plaintiff's interests in the Agreements—in plaintiff's opinion an unreasonable refusal—and the accompanying termination of the Agreements by Fidelity. Count I of the complaint is in assumpsit and seeks damages for unreasonable refusal to permit assignment and unreasonable termination, and in addition contains averments that said conduct was part of a scheme by Fidelity or Fidelity and the Funds to obtain unjust enrichment. Count II of the complaint sounds in tort and alleges that Fidelity alone or with the direction or acquiescence of the Funds wrongfully and intentionally interfered with plaintiff's business, and further that defendants engaged in a course of harassing tactics to destroy plaintiff's business. Although Count II sounds in tort the material factual averments supporting this theory relate primarily to the contractural relationships between the parties.

Both Fidelity and the Funds filed preliminary objections which question this Court's jurisdiction, and raise demurrers for failure to state a cause of action. Preliminary objections of the Funds also assert sovereign immunity as to Count II of the complaint.

We first turn to the question of this Court's jurisdiction in view of the assertion by the Funds of sovereign immunity as to Count II and the exclusive jurisdiction of the Board of Arbitration of Claims[1] (Board) as to Count I. Plaintiff would have us declare that the Funds are not the "Commonwealth" as

---

[1] The Board was created by the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-1 et seq.

provided in Article I, Section 11 of the Pennsylvania Constitution and, because its claim does not arise out of a construction contract that said claim is not within the jurisdiction of the Board, thereby giving this Court jurisdiction. After reviewing the statutory provisions creating the Funds and the applicable case law, we hold that the Funds are an integral part of the Commonwealth. Therefore, as to Count I, because of the exclusive jurisdiction of the Board over contractual disputes[2] with the Commonwealth, and, as to Count II, because of the constitutional shield of sovereign immunity, this Court is without jurisdiction over the Funds.

The defendant, State Employees' Retirement Board was created by the State Employees' Retirement Code, 71 Pa. C.S. §5101 et seq. The legislation characterizes it as an independent administrative board of the Commonwealth with seven members including the State Treasurer and six appointees of the Governor. 71 Pa. C.S. §5901(a). The Retirement Board possesses the powers and privileges of a corporation and the Attorney General is specifically designated as legal advisor. 71 Pa. C.S. §5901(e). Most germane in this case, the financial obligations of the Retirement Board are designated to be obligations of the Commonwealth, 71 Pa. C.S. §5951, and the legislation has also provided for appropriations for operating expenses of the Retirement Board from the General Fund. 71 Pa. C.S. §5902(c).

The statute establishing the Public School Employees' Retirement Board is analogous in relevant parts, Public School Employees' Retirement Code, 24

---

[2] *Koynok v. Department of Education*, 11 Pa. Commonwealth Ct. 556, 314 A.2d 355 (1974) ; *Kreider v. Pennsylvania Human Relations Commission*, 9 Pa. Commonwealth Ct. 491, 308 A.2d 642 (1973) ; *see Commonwealth v. Orsatti, Inc.*, 448 Pa. 72, 292 A.2d 313 (1972).

Pa. C.S. §8101 et seq., so as to make further discussion superfluous.[3] In summary, while both Funds possess certain attributes of independence they, nevertheless, retain an intimate relationship with the Commonwealth.

With this statutory background, prior to our Supreme Court's decision in *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975), any argument that the Funds were not the "Commonwealth" would have undoubtedly been summarily rejected. *See, e.g., Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973); *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973). However, in *Specter* the Supreme Court stripped the Turnpike Commission of its sovereignty in concluding "that the Commission is separate and apart from the Commonwealth and therefore may be treated differently." 462 Pa. at 493, 341 A.2d at 490. (Footnote omitted.)

In construing the *Specter* decision, this Court has concluded that the *financial independence* of the Turnpike Commission from the Commonwealth was the *primary factor* which led the Supreme Court to conclude that the Turnpike Commission is not the "Commonwealth."[4] *Kennedy v. Delaware River Joint Toll*

---

[3] 24 Pa. C.S. §8501(a) provides for an independent administrative board of eleven members including the Secretary of Education, State Treasurer, appointees of the Governor, and others. 24 Pa. C.S. §8501(e) gives the board powers and privileges of a corporation, and appoints the Attorney General, legal advisor. 24 Pa. C.S. §8531 makes the board's debt obligations of the Commonwealth. 24 Pa. C.S. §8521(b) provides for operating appropriations from the General Fund.

[4] We believe our interpretation is supported by the following language from *Specter, supra:*

"The legislature chose, instead, to delegate the accomplishment of this superhighway project to a separate entity, governmental in nature but in many respects independent of the Commonwealth. The legislature created this separate body *and at the same time dis-*

*Bridge Commission,* 23 Pa. Commonwealth Ct. 662, 354 A.2d 52 (1976); *Poklemba v. Shamokin State General Hospital,* 21 Pa. Commonwealth Ct. 301, 344 A.2d 732 (1975). In this vein, it is important to note that the Turnpike Commission, unlike the Funds, is statutorily forbidden to create any debt which obligates the Commonwealth. Section 2 of the Act of May 21, 1937, P.L. 774, *as amended,* 36 P.S. §652b. Nor does the Turnpike Commission receive appropriations from the General Fund, and its financial independence is further emphasized by the requirement that the Commission reimburse the Department of Highways (now PennDOT) for expenditures made on behalf of the Commission. Sections 3(d) and 12 of the Act of 1937, 36 P.S. §§652c(d), 6521.

The Funds possess no such financial independence, and in fact, their economic ties with the Commonwealth are of such a conjugal nature as to render *Specter* inapposite.

In summary, the doctrine of sovereign immunity demands the dismissal of Count II of the complaint as against the Funds. Likewise Count I as it pertains to the Funds is not within our original jurisdiction because claims against the Commonwealth arising from contracts are exclusively within the jurisdiction of the Board of Arbitration of Claims to the extent the Legislature has waived sovereign immunity in creating said Board. *See supra,* note 2.

The question of the proper forum for plaintiff's complaint against Fidelity poses problems of a more

---

*claimed any responsibility on the part of the Commonwealth for liabilities which it, the Commission, might incur. It is clear that the Commission is not an integral part of the Commonwealth,* and cannot share the attributes of sovereignty which inhere in the state. It follows that the Commission is not immune from suit in tort for the acts of its servants and agents acting in the course of their employment or agency." 462 Pa. at 493-94; 341 A.2d at 491 (Emphasis added.)

vexing character. Clearly, in the absence of the Funds, this Court does not enjoy original jurisdiction over this complaint against Fidelity as it is not the "Comwealth" as defined in the Appellate Court Jurisdiction Act of 1970.[5]

After careful deliberation, it appears that Count I as to Fidelity should also be heard by the Board. Fidelity, in part, is being sued as agent of the Funds, and the Funds have acted through Fidelity in most relevant instances, inextricably entwining all the defendants as to the acts which produced this law suit. In addition, Count I further links the defendants because of allegations of a scheme between Fidelity and the Funds to terminate the Agreements and obtain unjust enrichment.

Fidelity has also quite properly pointed out the sound policy in having the contractual claim heard by the Board as to all parties—to prevent the inconsistent results possible by splitting Count I between different forums. Such an anomalous situation could have the effect of nullifying the Board's exclusive jurisdiction in a case where the Board found in favor of the Funds and another forum found in favor of the plaintiff, for financial responsibility could ultimately be visited upon the Funds by concepts of respondeat superior or other theories notwithstanding a contrary decision of the Board.

Jurisdiction in the Board over actions involving private party defendants is not without support in case law. In *Brocker Manufacturing & Supply Company, Inc. v. United Bonding & Insurance Company*, 8 Pa. Commonwealth Ct. 110, 301 A.2d 438 (1973), a subcontractor sued the general contractor, the general contractor's surety, and the Commonwealth.

---

[5] Section 102(a)(2) of the Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.102(a)(2).

There it was argued that the Board should not have jurisdiction because the *real dispute* was between the subcontractor and the general not the Commonwealth. In rejecting that argument we said:

"The Commonwealth is not completely isolated from the contractual dispute between the subcontractor and contractor, because the Commonwealth ultimately must pay for the work completed. A dispute between the contractor and subcontractor to a contract of which the Commonwealth is also a party necessarily affects the Commonwealth, and falls within the jurisdiction of the Board of Arbitration of Claims . . . ." *Brocker, supra,* 8 Pa. Commonwealth Ct. at 113, 301 A.2d at 440.

Although the parties here are not in the same postures as those in *Brocker,* we believe this language is equally applicable in the present case, and possibly more so, in that the Funds may have liability as principals of Fidelity as well as individually.

Courts have in the past endorsed a "broad view" of the jurisdiction given the Board, *see Armour Rentals, Inc. v. General State Authority,* 4 Pa. Commonwealth Ct. 517, 287 A.2d 862 (1972) ; *Gann-Dawson, Inc. v. Commonwealth,* 41 Pa. D. & C. 2d 355 (1966), and a practical approach compels us to find jurisdiction in the Board over Count I as to all defendants thereby achieving judicial economy and promoting the orderly administration of justice.

Despite the foregoing, and our desire to avoid a bifurcation of this case, we can find no convincing authority or sound reason to allow the Board to hear Count II against Fidelity alone. Neither precepts of judicial economy nor the promotion of the orderly administration of justice can be extended to afford ancillary jurisdiction to the Board to hear a tort claim against Fidelity because it assertedly arises out of a multi-contract relationship involving the Funds.

The remaining alternative—to transfer to the Court of Common Pleas of Montgomery County this segment of plaintiff's cause of action as against Fidelity— poses its own perplexing problems for the trial of such a cause before or after the assumpsit claim before the Board is disposed of, because such proceedings materially affect as a matter of law the companion cause of action.[6]

A pragmatic resolution is, therefore, necessary to avoid an improper result in the ultimate disposition of these respective causes of action. The most logical approach, in our view, is to direct postponement of the trial of the asserted cause of action in tort against Fidelity (Count II) pending disposition of Count I by the Board whereupon plaintiff's entitlement to proceed and recover against Fidelity may be determined.

## ORDER

Now, September 9, 1976, having concluded that jurisdiction over Count I properly lies in the Board of Arbitration of Claims, Count I of plaintiff's complaint is hereby transferred to the Board of Arbitration of Claims where said action shall be considered filed as of the date the same was filed in this Court.

Count II of plaintiff's complaint against the Public School Employees' Retirement Board and the State Employees' Retirement Board is hereby dismissed.

---

[6] Plaintiff may not, of course, obtain a double recovery. Pa. R.C.P. No. 1020d(3) includes specific provisions to avoid such a result where, as is usually the case, the causes of action are tried together. The same principle applies with equal force where the causes of action are tried separately and such separate trial is clearly contemplated by that Rule which provides, in part: "All causes of action shall be tried together, *unless otherwise ordered by the court.*" (Emphasis added.) *See generally* Goodrich-Amram Standard Pennsylvania Practice 326, Commentary to Rule 1020(d) (Supp. 1975).

Count II of the plaintiff's complaint against Fidelity Philadelphia Trust Company is transferred to the Court of Common Pleas of Montgomery County pursuant to Pa. R.A.P. 751 and Section 503(b) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. §211.503(b), with direction to that Court to stay further proceedings thereon pending disposition of the proceedings hereby transferred to the Board of Arbitration of Claims.

The Chief Clerk shall certify to the Prothonotary of said court and to the Board of Arbitration of Claims photocopies of the docket entries of the above captioned matter and transfer to the Board the record of this proceedings and to the Court of Common Pleas photocopies thereof certified as true copies of the originals.

The Chief Clerk is directed to mail copies of this Order to all counsel of record.