**McKEESPORT MUNICIPAL WATER AUTHORITY, a municipal authority, Appellant,**

v.

**Harry J. McCLOSKEY and the City of McKeesport.**

Commonwealth Court of Pennsylvania.

Argued Nov. 21, 1996.

Decided Feb. 24, 1997.

---

Larry A. Silverman, Pittsburgh, for appellant.

Vincent A. Coppola, Pittsburgh, for appellee, Harry J. McClosky.

Before KELLEY and LEADBETTER, JJ., and NARICK, Senior Judge.

OPINION

KELLEY, Judge.

The McKeesport Water Authority (authority) appeals by permission from the order of the Court of Common Pleas of Allegheny County (trial court) denying the authority's motion for summary judgment. We affirm the trial court's order denying the authority's motion for summary judgment.

The facts of this case may be summarized as follows. On March 5, 1984, Harry J. McCloskey (plaintiff) filed a class action complaint in assumpsit against the authority alleging a cause of action which arose out of a giardia infestation of the McKeesport area water supply in 1984. Subsequently, on September 7, 1984, plaintiff filed a seven count Third Amended Complaint alleging a class action in assumpsit against the authority.

In this complaint, plaintiff, a customer of the authority, alleged that the authority contracted to supply and sell "potable water" to residents of the City of McKeesport and certain surrounding communities. Plaintiff also alleged that he was a representative of a class of persons who, on or before February 24, 1984, entered into an express month to month contract with the authority wherein the authority agreed to continuously supply potable water as required by their respective households. Plaintiff also alleged that on February 24, 1984, the authority advised him and the members of the class that the water being supplied by the authority was unsafe for human consumption because of contamination by a parasite.

In Count V of the Third Amended Complaint, plaintiff alleged that the authority was a merchant with respect to the water it sold, and implicitly warranted that the water sold would be of merchantable quality. Plaintiff alleged that in failing to supply potable water to him and the members of the class the authority breached this warranty, thereby asserting a cause of action for breach of the implied warranty of merchantability under the Pennsylvania Uniform Commercial Code (UCC).[1] As a result, the plaintiff alleged that he and the members of the class were required to purchase potable water from oth-

---

1. 13 Pa.C.S. §§ 1101—9507.

er sources at prices or costs which exceeded those contained in the contract, and they would continue to incur additional expenses in obtaining potable water from these alternative sources. Based on a number of prior court rulings in the extensive procedural history of this case, only Count V of the plaintiff's Third Amended Complaint remains.

On August 3, 1995, the authority filed a motion for summary judgment and in support thereof incorporated, *inter alia*, the Answer and New Matter to Count V of the plaintiff's Third Amended Complaint it had filed on February 2, 1993. In the Answer and New Matter the authority alleged, *inter alia*, that as a local agency, the plaintiff's claim for relief was barred in whole or in part by what is commonly referred to as the Political Subdivision Tort Claims Act (Act).[2]

After argument on the authority's motion for summary judgment, the trial court issued an order and opinion on January 10, 1996 denying the authority's motion for summary judgment. The trial court determined that a cause of action based on breach of an implied warranty of merchantability is a cognizable cause of action against a local agency under the exceptions contained in section 8542(b)(5) of the Act. In making this determination, the trial court noted that section 8542(b)(5) of the Act requires a showing that the authority had actual or constructive notice of an alleged dangerous condition in order for the plaintiff to maintain a cause of action. The court also noted that a letter dated October 21, 1980 from the chairperson of the authority was attached to the authority's complaint to join the city as an additional defendant which had been filed on November 21, 1989. The letter indicated that at that early date, both the authority and the city were aware of defects in the water system. In addition, paragraph six of the complaint alleged that the authority notified the Mayor and the City Council of the need for major improvements to the water system. As a result, the trial court determined that the authority had sufficient notice of the dangerous condition in

order for the plaintiff to maintain the cause of action alleged in Count V of his Third Amended Complaint.

On February 21, 1996, the trial court issued an order amending its January 10th order, stating that because its order involves a controlling question of law as to which there is a substantial ground for difference of opinion, an immediate appeal of the order may materially advance the ultimate termination of this case. As a result on April 9, 1996, pursuant to Pa.R.A.P. 1311,[3] this court granted the authority's petition for permission to appeal the trial court's January 10th order, stating that the issues on appeal shall be limited to:

1. Where a plaintiff asserts liability against a local agency for tort damages under a breach of implied warranty theory, is such a claim barred by the immunity provisions of the Political Subdivision Tort Claims Act?

2. Even assuming, *arguendo*, that the exceptions to immunity contained in § 8542 of the Act are applicable to this breach of warranty claim, are the notice provisions of § 8542(b)(5) satisfied where the only evidence presented by McCloskey related to problems with the water supply generally and not the specific dangerous condition (a giardia infestation) which is alleged to have caused the injuries claimed?

In this appeal the authority claims that, in denying its motion for summary judgment, the trial court erred in determining: (1) that the plaintiff's claim for tort damages under a breach of implied warranty theory was not barred by the immunity provisions of the Act; and (2) that the notice requirement of an allegedly dangerous condition under § 8542(b)(5) of the Act was satisfied where the only evidence of notice was the letter dated October 21, 1980 from the chairperson of the authority, and it merely related to problems with the water supply generally and not the specific dangerous condition (a

---

2. 42 Pa.C.S. §§ 8541—8542.

3. Pa.R.A.P. 1311 provides, in pertinent part:
   (a) **General Rule.** An appeal may be taken by permission under 42 Pa.C.S. § 702(b) (in-

terlocutory appeals by permission) from any interlocutory order of a lower court or other governmental unit.
Pa.R.A.P. 1311(a).

giardia infestation) which was the cause of injury in this case.

We initially note that our scope of review of a grant or denial of a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. La-Barr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Id.*

The authority first claims that the plaintiff's claim for tort damages under a breach of implied warranty theory is barred by the immunity provisions of the Act. In particular, the authority contends that the exceptions to the immunity provisions apply only to "negligent acts" and do not apply to claims for tort damages under a breach of implied warranty theory.

In Count V of his Third Amended Complaint, plaintiff alleged:

26. [The authority] was at all relevant times a merchant with respect to the water sold and had both established a course of dealing and trade usage with respect to plaintiff and the balance of the class members.

27. [The authority] thereby implicitly warranted that the water sold would be of merchantable quality.

28. Plaintiff, and the balance of the class members, relied upon the warranty thus created in purchasing water from [the authority].

29. [The authority], in failing to supply potable water to plaintiff, and the balance of the class members, breached the warranty thus created.

30. As a direct result of [the authority]'s breach of the above warranty, plaintiff and the balance of the class members, have suffered the damages set forth....

Thus, plaintiff alleged a cause of action under § 2314 of the UCC which states, in pertinent part:

**§ 2314. Implied warranty; merchantability; usage of trade**

**(a) Sale by merchant.**—Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

**(b) Merchantability standards for goods.**—Goods to be merchantable must be at least such as:

(1) pass without objection in the trade under the contract description;

(2) in the case of fungible goods, are of fair average quality within the description;

(3) are fit for the ordinary purposes for which such goods are used;

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S. § 2314(a), (b).

In general, it has long been recognized that a buyer who sustains damages due to the unfitness of goods for an intended purpose may institute an action in assumpsit based upon a breach of an implied warranty or an action in trespass based upon specific averments of negligence. *Loch v. Confair*, 361 Pa. 158, 63 A.2d 24 (1949); *Knapp v. Willys–Ardmore, Inc.*, 174 Pa. Superior Ct. 90, 100 A.2d 105 (1953). As the Pennsylvania Supreme Court noted:

In both instances the elements of damage may be identical, viz., the damage naturally and proximately resulting from a breach of implied warranty or a breach of duty ... An election of remedies in this regard has, however, never been held by this Court to authorize institution of a contract action based upon averments of negligence. Nor, conversely, has it authorized institu-

tion of a negligence action based upon averments of contract. Essential distinctions which exist have been recognized. While there is a distinct tendency toward relaxation of the strictness of the common law as regards pleadings, a plaintiff cannot successfully maintain an action in one form by averring facts establishing a valid cause of action if properly brought in another form. It is immaterial that the damages recoverable might be identical.

*Loch,* 361 Pa. at 162, 63 A.2d at 26 (citations omitted).

■■■ However, as the Pennsylvania Supreme Court has noted:

[I]n the area of products liability we enter the borderland of tort and contract. It is not a question of whether a claim sounds in tort or assumpsit. Rather it sounds in both. Therefore, there is no legitimacy in attempting to use such a [tort/contract] dichotomy as the predicate for distinction as to the [proper statute of] limitation to be given the action.

*Williams v. West Penn Power Company,* 502 Pa. 557, 569, 467 A.2d 811, 817 (1983). Thus, in an action seeking damages for personal injury resulting from a defective product, a claimant has the option of proceeding in tort, governed by the tort statute of limitations, or under the UCC, governed by the UCC statute of limitations. *Id.*

In the past, this court has consistently refused to permit a plaintiff to avoid the governmental immunity provisions of the Act by couching his claim for the recovery of tort damages under a breach of contract theory. *See, e.g., Sims v. Silver Springs–Martin Luther School,* 155 Pa.Cmwlth. 619, 625 A.2d 1297 (1993); *Bendas v. Upper Saucon Township,* 127 Pa.Cmwlth. 378, 561 A.2d 1290 (1989); *Schreck v. North Codorus Township,* 126 Pa.Cmwlth. 407, 559 A.2d 1018 (1989), *appeal dismissed,* 526 Pa. 266, 585 A.2d 464 (1991); *Silkowski v. Hacker,* 95 Pa.Cmwlth. 226, 504 A.2d 995 (1986).

As this court stated in *Schreck:*

This court has previously rejected attempts to circumvent the above immunity provisions of [the Act] by fashioning a cause of action in assumpsit which is in reality nothing more than a cause of action sounding in tort. See *Gilius v. Board of Supervisors of Fairview Township,* 122 Pa.Cmwlth. Ct. 371, 552 A.2d 327 (1988). In *Gall by Gall v. Allegheny County Health Department (Gall I),* 98 Pa.Commonwealth Ct. 175, 510 A.2d 926 (1986), we addressed negligence and breach of warranty claims brought by persons who ingested giardia-infested water. In *Gall I,* the plaintiffs alleged that the City of McKeesport and its Water Authority breached an implied warranty. of merchantability and fitness by failing to provide reasonably clean and safe water, thereby causing damage to the plaintiffs. We sustained the preliminary objections in the nature of a demurrer filed by the City and the Water Authority, holding that a municipality and those acting within the scope of their employment with the municipality were immune from suit under [the Act] for negligently supplying impure water to the public. We further stated that having concluded that a municipality could not be held liable on a negligence theory, neither could it he held liable on a theory of breach of implied warranty because there was no implied warranty of merchantability in connection with the sale or supply of water.

In *Olympic, Inc. v. McKeesport Municipal Water,* 104 Pa.Commonwealth Ct. 107, 521 A.2d 95 (1987), we addressed negligence and breach of warranty claims in a similar fact pattern and held, on the basis of *Gall I,* that the City of McKeesport and the Municipal Water Authority could not be held liable on a theory of breach of implied warranty to persons who ingested giardia-infested water or to a restaurant which used the infested water.

In *Gall by Gall v. Allegheny County Health Department (Gall II),* 521 Pa. 68, 555 A.2d 786 (1989), the Pennsylvania Supreme Court reversed our determination that there was no implied warranty of merchantability in connection with the sale or supply of water. The supreme court concluded that the plaintiffs in *Gall* had stated a cause of action based upon a breach of implied warranty, holding that water constituted "goods" to which the im-

plied warranty of merchantability of section 2314 of the [UCC] applied.

In *Miller v. McKeesport Municipal Water Authority,* 521 Pa. 77, 555 A.2d 790 (1989), the supreme court affirmed in·part and reversed in part our decision in *Olympic, Inc.* Applying its reasoning in *Gall II,* the supreme court determined that the municipality and the water authority could be held liable for negligent maintenance and operation of a municipal water facility when such negligence proximately causes an outbreak of giardiasis resulting in harm to the persons consuming the water and to the restaurant. However, the supreme court in *Miller* upheld this court's dismissal of those counts of the restaurant's complaint which averred that the City and the Water Authority breached a contract by failing to provide the restaurant with reasonably clean and safe water in exchange for a reasonable fee.

... Essential to the supreme court's holding in *Gall II* is its conclusion that water constitutes "goods" under section 2314 of the [UCC]. Section 2314(a) provides that unless modified or excluded, a warranty that goods sold shall be merchantable is implied in the contract of sale if the seller is a merchant with respect to goods of that kind. "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." 13 Pa.C.S. § 2105(a). Based upon its conclusion that water constitutes "goods" under this definition, the supreme court determined that "[t]he Galls' complaint states causes of action that are cognizable under ... the implied warranty of merchantability as provided by [§ ] 2314

[of the UCC]." *Id.,* 521 Pa. 77, 555 A.2d 790.

*Schreck,* 559 A.2d at 1022–24 (footnotes omitted).[4]

■ In the instant case, Count V of the plaintiff's Third Amended Complaint is styled as an action in assumpsit, and alleges that the authority breached the implied warranty of merchantability in that it failed to deliver potable water. Based on this breach of the implied warranty, the plaintiff alleged that he suffered the following damages:

10. Plaintiff and the balance of [the] class have since February 24, 1984, been obliged to purchase or procure, or otherwise obtain, potable water from sources other than [the authority] at prices or costs greatly exceeding those contracted for· with [the authority], and have been compelled to expend their time and money in thus obtaining potable water from alternative sources.

11. Plaintiff, and the balance of the class will be required in the future to incur additional expenses to supply their households with water for drinking, cooking and sundry other household uses.

12. The above damages to the class members are the direct result of [the authority]'s breach of its contract with plaintiff and the remaining class members.

Regarding the damages which may be recovered as a result of a breach of the implied warranty, § 2711 of the UCC states, in pertinent part:

**§ 2711. Remedies of buyer in general; security interest of buyer in rejected goods**

---

4. *See also Bendas,* 561 A.2d at 1292–93, wherein we stated:

Here, as in *Gilius* ... none of Appellants' allegations of negligence fit within any of the exceptions to governmental immunity encompassed under subsection 8542(b) of the [Act]. Likewise, Appellants' assumpsit count sounds in tort as Appellant essentially avers that the Township negligently issued the [sewage] permit in question. Previous attempts to disguise tort causes of action not falling within the exceptions to governmental immunity as assumpsit counts to avoid the immunity provisions have been rejected by this Court. *Id.;*

Silkowski.... Nor may an implied warranty of merchantability attach to the Township's testing and permit issuance pursuant to Section 2314 of the [UCC], as these acts constitute "services" rather than "goods". *Schreck....* Contrast *Gall [II]* ... where the Pennsylvania Supreme Court concluded that water constituted "goods" under the [UCC] and that a cause of action arising under Section 2314 of the [UCC] for breach of implied warranty could be maintained against a municipality and local water authority for supplying contaminated water.

(a) **Cancellation and additional remedies.**—Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2612 (relating to "installment contract"; breach)), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid:

(1) "cover" and have damages under section 2712 (relating to "cover"; procurement by buyer of substitute goods) as to all the goods affected whether or not they have been identified to the contract. . . .

13 Pa.C.S. § 2711(a)(1).

In turn, § 2712 of the UCC provides, in pertinent part:

§ 2712. **"Cover"; procurement by buyer of substitute goods**

(a) **Right and manner of cover.**—After a breach within section 2711 (relating to remedies of buyer in general; security interest of buyer in rejected goods) the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(b) **Damages recoverable.**—The buyer may recover from the seller as damages the difference between the cost of cover and the contract price, together with any incidental or consequential damages as defined in section 2715 (relating to incidental and consequential damages of buyer) but less expenses saved in consequence of the breach by the seller.

13 Pa.C.S. § 2712(a), (b).

Based on the foregoing, it is apparent that the plaintiff in this case is merely seeking to recover the expenses he incurred in his efforts to effect "cover" due to the authority's inability to furnish potable water as required by the contract. Clearly, such a cause of action in assumpsit may be maintained by the plaintiff against the authority. *See* 13 Pa.C.S. § 2314; *Gall II; Schreck; Bendas.* In addition, the expenses which the plaintiff seeks to recover from the authority for its breach of the implied warranty of merchantability are specifically provided for under §§ 2711, 2712 and 2715 of the UCC.

■ Recognizing that the plaintiff has asserted a valid cause of action in assumpsit, we must now consider whether the authority is statutorily immune from liability, and what forum has jurisdiction to consider the action. Article 1, § 11 of the Pennsylvania Constitution states:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. 1, § 11.

In addition, 1 Pa.C.S. § 2310 states:

Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) unless otherwise specifically authorized by statute.

1 Pa.C.S. § 2310.

The principles enunciated in the foregoing provisions were summarized by the Pennsylvania Supreme Court as follows:

Subject to the limitations arising from the federal nature of our government and the provisions of the federal Constitution the Commonwealth of Pennsylvania is a sovereign State, and, as such, it cannot be sued except with its own consent . . . That consent is conditionally provided by Article

I, Section 11 of the State Constitution, which says that "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

*Kaufman Construction Company v. Holcomb,* 357 Pa. 514, 516, 55 A.2d 534, 535 (1947) (citations omitted).

■ As a result, for causes of action sounding in tort based on the negligent acts of its employees, the governmental immunity of local agencies has been waived under the circumstances outlined in § 8541 of the Act, and the sovereign immunity of the Commonwealth has been waived under the circumstances outlined in § 8522 of what is commonly referred to as the Sovereign Immunity Act.[5] Likewise, for causes of action sounding in contract, the sovereign immunity of the Commonwealth has been waived under the provisions of the Board of Claims Act.[6] *See Shovel Transfer and Storage, Inc. v. Simpson,* 523 Pa. 235, 239, 565 A.2d 1153, 1155 (1989) ("Although the Commonwealth traditionally had sovereign immunity from suit, the establishment of the Board of Claims waived that immunity by providing a tribunal whose specific duty was to entertain contract actions against the Commonwealth").[7]

■ In some instances, certain authorities have been considered to be "instrumentalities of the Commonwealth" so that the provisions of the Sovereign Immunity Act, and not the Political Subdivision Tort Claims Act, protected them from liability in actions sounding in tort. *See, e.g., Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990); *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270 (1986); *Southeastern Pennsylvania Transportation Authority v. Union Switch & Signal, Inc.,* 161 Pa. Cmwlth. 400, 637 A.2d 662 (1994). However, we have previously noted that "[w]hile authorities may be considered an 'instrumentality of the Commonwealth', that does not mean that they are automatically considered to be 'the Commonwealth' for all purposes." *Id.,* 637 A.2d at 666. Rather, "[t]o determine whether they should be considered as 'the Commonwealth', we examine the intent of the General Assembly in enacting a particular piece of legislation." *Id.*

Thus, in determining what forum has jurisdiction to consider an action against an authority sounding in contract, we have considered the Board of Claims Act and the legislation creating the authority. *See, e.g., Id.; Pennsylvania Housing Finance Agen-*

---

5. 42 Pa.C.S. §§ 8521—8522.

6. Act of May 20, 1937, P.L. 728, *as reenacted and amended,* 72 P.S. §§ 4651–1—4651–10.

7. *See also United Brokers Mortgage Company v. Fidelity Philadelphia Trust Company,* 26 Pa. Cmwlth. 260, 363 A.2d 817 (1976). In that case, a mortgage company filed a complaint in assumpsit and trespass against the Public School Employees' Retirement Board, the State Employees' Retirement Board and their corporate trust agent in this court. Count I of the complaint sounded in contract and sought damages for the trust agent's unreasonable refusal to permit assignment of the mortgage company's interests in certain agreements and for the trust agent's unreasonable termination of the agreements. *Id.,* 363 A.2d at 819. Count II of the complaint sounded in tort and alleged that the trust agent, alone or with the direction or acquiescence of the state boards, wrongfully and intentionally interfered with the mortgage company's business, and engaged in a course of harassing tactics to destroy its business. *Id.* Both the trust agent and the state boards filed preliminary objections which, *inter alia,* questioned this court's

jurisdiction to adjudicate Count I of the complaint, and asserted sovereign immunity as to Count II of the complaint. *Id.*

We ultimately determined that, as to Count I of the complaint, the Board of Claims had jurisdiction to adjudicate the action as claims against the Commonwealth arising from contracts are exclusively within its jurisdiction to the extent that the General Assembly has waived sovereign immunity in creating the Board. *Id.,* 363 A.2d at 821–22. Regarding Count II of the complaint, we determined that the state boards were so intimately tied to the state that they could be considered to be the "Commonwealth" and were, therefore, immune from suit under the doctrine of sovereign immunity. *Id.,* 363 A.2d at 820–22. As a result, we ordered that: Count I of the complaint sounding in contract against all parties be transferred to the Board of Claims; Count II of the complaint sounding in tort against the state boards be dismissed; and Count II of the complaint sounding in tort against the trust company be transferred to a court of common pleas, directing that court to stay the proceedings pending the disposition of Count I by the Board of Claims.

*cy v. Abreen Corporation,* 84 Pa.Cmwlth. 571, 480 A.2d 335 (1982); *Delaware River Port Authority of Pennsylvania and New Jersey v. Board of Arbitration of Claims,* 45 Pa.Cmwlth. 281, 405 A.2d 600 (1979). In each of these cases, we have consistently determined that, for purposes of actions sounding in contract, these authorities are not "instrumentalities of the Commonwealth" and jurisdiction lies not with the Board of Claims but with the courts of common pleas.[8] *Southeastern Pennsylvania Transportation Authority; Pennsylvania Housing Finance Agency; Delaware River Port Authority of Pennsylvania and New Jersey.*

As alleged in the complaint filed by the plaintiff in the instant case, the authority in the instant assumpsit action was organized pursuant to the Municipality Authorities Act of 1945.[9] Under the Municipality Authorities Act of 1945, the authority is explicitly authorized "[t]o make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business." 53 P.S. § 306(B)(j). In addition, under the Municipality Authorities Act of 1945, the authority has the right and power "[t]o sue and be sued, implead and be impleaded, complain and defend in all courts". 53 P.S. § 306(B)(b). Thus, the specific legislation passed by the General Assembly which provided for the incorporation of the authority and granted the authority the power to enter into the contract with the plaintiff, also provided the plaintiff with the ability to initiate the instant action in assumpsit against the authority on its breach of the implied warranty merchantability contained in the contract.

To summarize, in the instant action the plaintiff is seeking damages for the authority's failure to supply potable water under the express month to month contract he entered with the authority. Such a cause of action may be styled as either an action in trespass based upon averments of negligence, or an action in assumpsit based on the breach of the implied warranty of merchantability. The plaintiff has initiated the instant suit as one in assumpsit, alleging the authority's breach of the implied warranty of merchantability, and not as an action in tort based on the authority's negligence. This cause of action is specifically authorized by the UCC and case law, and the damages alleged by the plaintiff are specifically provided for in the UCC.

■ Although the Commonwealth generally enjoys immunity from all lawsuits, lawsuits may be brought against the Commonwealth in such a manner and in such courts as the General Assembly may direct. For actions sounding in tort, the General Assembly has directed that sovereign immunity for claims against the Commonwealth has been waived under the Sovereign Immunity Act, and governmental immunity for claims against local agencies has been waived under the Political Subdivision Tort Claims Act.

For actions sounding in contract, the General Assembly has directed that sovereign immunity for claims against the Commonwealth has been waived under the Board of Claims Act. In contrast, under the Municipality Authorities Act of 1945, the General Assembly has specifically authorized authorities to enter into contracts, and has specifically provided that the authorities may be sued and may defend in all courts. Although actions against the Commonwealth based on contract claims must be filed in the Board of Claims, such actions against municipal authorities must be filed in the courts of common pleas.

■ Thus, the trial court in the instant case properly denied the authority's motion for summary judgment as the plain-

---

8. Presumably, jurisdiction is conferred to the courts of common pleas under § 931 of the Judicial Code which provides, in pertinent part:

   **§ 931. Original jurisdiction and venue**
   (a) **General rule.**—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule ... vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.
   42 Pa.C.S. § 931(a).

9. Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§ 301—322.

tiff has alleged a recognized cause of action and the authority is not immune from liability. However, the trial court erred in applying the provisions of the Act in determining that the authority was not immune from liability.[10] The instant action is not based on any allegation that the authority or one of its employees acted in a negligent manner. Rather, the instant action is based on the authority's failure, for whatever reason, to supply potable water under the terms of the contract in breach of the implied warranty of merchantability. The damages sought by the plaintiff do not relate to either personal or property damage which resulted from the authority's breach, but merely to recover expenses which he has incurred in his efforts to effect "cover". Clearly, the Political Subdivision Torts Claim Act has no application to the instant case. Based on our disposition of this issue, we will not address the second issue raised in this appeal.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 24th day of February, 1997, the order of the Court of Common Pleas of Allegheny County, dated January 10, 1996, at No. G.D. 84–3814, is affirmed.

---

10. Although the trial court denied the authority's motion for summary judgment on different grounds, an appellate court may affirm the judgment of a trial court where the result is correct, even though the reason given is erroneous, where the correct basis for the decision is clear on the record. *Beck v. Zabrowski*, 168 Pa. Cmwlth. 385, 650 A.2d 1152 (1994).