# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine Pachella and Richard : 
Pachella, w/h : 
  : 
         v. :   No. 1609 C.D. 2016
  :   Argued: May 1, 2017
Archdiocese of Philadelphia and : 
St. Patrick's Parish, : 
                Appellants : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: August 14, 2017**


The Archdiocese of Philadelphia and St. Patrick's Parish (collectively, Archdiocese) appeal from the August 12, 2016 Order of the Court of Common Pleas of Philadelphia County (Philadelphia common pleas), which made appealable two September 2, 2015 Orders of the Court of Common Pleas of Montgomery County (trial court), which granted Montgomery County's (County) motion for summary judgment, dismissed it as a party, and denied the Archdiocese's cross-motion for summary judgment. On appeal, the Archdiocese argues that the trial court erred as a matter of law in granting summary judgment to the County under what is commonly referred to as the Political Subdivision Tort

Claims Act (Tort Claims Act),[1] 42 Pa. C.S. §§ 8541-8564, because the Archdiocese sufficiently alleged a breach of contract claim based on the County's failure to obtain $1,000,000 of liability insurance in which both the County and the Archdiocese "shall be named as insured" (contractual insurance requirement), as required by its License Agreement with the County. For the reasons herein, we affirm.

In December 2006, Catherine and Richard Pachella (Pachellas) filed a Complaint in Philadelphia County against the Archdiocese, alleging that, in November 2005, Mrs. Pachella was injured when she tripped and fell on the sidewalk outside of St. Patrick's Parish (St. Patrick's).[2] At the time, the County was leasing St. Patrick's premises for use as an election polling place. In February 2007, the Archdiocese filed a Joinder Complaint against the County, alleging common law negligence and breach of contract claims under a Lease Agreement between St. Patrick's and the County Board of Elections (Lease Agreement) and a License Agreement between the Archdiocese and the County Board of Elections (License Agreement). (Joinder Compl., R.R. at 41a-50a.)

The Lease Agreement, originally signed in 1989 and every year thereafter, provides, only generally, that the County "agrees to maintain liability insurance

---

[1] Section 8541 of the Tort Claims Act provides, as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S. § 8541.

[2] Mr. Pachella sought damages for loss of consortium.

concerning its use of the premises."[3] (*Id.*at 65a-66a.) It is the License Agreement that specifies, in pertinent part, that the County is

> [t]o obtain at [its] own expense and keep in effect during the full period in which the privileges hereunder are granted, a policy or policies of liability insurance written on an occurrence basis, in which both [the County] and [the Archdiocese] shall be named as insured with minimum policy limits of $1,000,000 for bodily injury . . . and for property damage . . . .

(*Id.* at 68a.) The License Agreement, dated November 2, 1989, also requires the County to defend, indemnify, and hold the Archdiocese harmless for claims arising out of, *inter alia*, any bodily injuries. (*Id.* at 69a.)

In the Joinder Complaint, the Archdiocese alleged the following:

> 13. Pursuant to the . . . Licensing Agreement, **[t]he County . . . is to obtain insurance for the time period the premises is leased from [t]he Archdiocese** . . . as well as to hold harmless, defend and indemnify [t]he Archdiocese . . . for any injuries arising out of the Lease and Licensing Agreement. . . .

> 14. The County . . . owed duties to Plaintiffs and Defendants, [t]he Archdiocese . . . [,] to act with diligence and care in carrying out its obligations to provide safe ingress and egress for candidates running for election and voters.

> 15. If [t]he Archdiocese . . . is found liable in this action, such liability being expressly denied, then it will be because the County . . . **failed in its duty to act diligently and with care.**

> 16. By reason of such **negligence**, the County . . . is directly liable to Plaintiffs, or, in the alternative, if and to the extent the Plaintiffs

---

[3] In the Joinder Complaint, the Archdiocese stated that the County leased St. Patrick's for use on Election Day every year since 1989. (Joinder Compl. ¶ 11.) Although the Lease Agreement in record is not dated, it contains a space for the entry of the year, indicating "A.D. 20__." (R.R. at 66a.) The County has asserted that the Lease Agreement was signed in 2005. (R.R. at 391a.)

obtain a judgment against [t]he Archdiocese . . . , [t]he Archdiocese . . . will be entitled to judgment over and against the County . . . for complete indemnification, reimbursement, and contribution.

17. The County . . . contracted with the Archdiocese . . . **whereby they agreed to obtain insurance**, defend and indemnify [t]he Archdiocese . . . **for any injury arising out of the Lease and Licensing Agreement** . . . .

18. . . . If [t]he Archdiocese . . . is found liable in this action, such liability being expressly denied, **because they did not reasonably maintain the property** at St. Patrick's Parish on November 8, 2005, Election Day, **then such a condition will have occurred because the County . . . breached its contract and duties**.

(Joinder Compl. ¶¶ 13-18, R.R. at 46a-47a (emphasis added).)

The County challenged venue in Philadelphia, and the matter was transferred to the trial court in May 2007. The County did not answer the Joinder Complaint until January 29, 2015, when it filed its answer with new matter and a crossclaim. The County admitted, *inter alia*, that "the License Agreement requires the County to obtain insurance for the time period that the premises is leased by the County and contains a provision regarding defense and indemnification of the Defendants for certain claims described in the License Agreement." (R.R. at 79a-80a.) The County asserted that it was **immune** from the claims under the Tort Claims Act, that none of the exceptions under the Tort Claims Act apply, and that the indemnification provision of the License Agreement was unenforceable. (*Id.* at 79a-82a.) The Archdiocese filed a reply to the new matter and crossclaim, asserting once again that the County agreed to defend and indemnify the

4

Archdiocese and that the Tort Claims Act does not bar the action.[4] (*Id.* at 87a-97a.)

Subsequently, the County moved for summary judgment (motion) and filed a memorandum in support of its motion. The Archdiocese then filed a cross-motion for summary judgment (cross-motion) and a memorandum in support of its cross-motion (memorandum in support), in which it asserted that the County anticipatorily breached its "Agreement" with the Archdiocese, will not indemnify the Archdiocese, and that the County "**may not have obtained the requisite insurance** it was required to [] under the terms of the Agreement with the Archdiocese[.]" (Archdiocese Memorandum in Support, R.R. at 216a-17a (emphasis added).)

There is some confusion in this case regarding the terminology used to describe which agreement has been breached. In its cross-motion, the Archdiocese refers to both the Lease and License Agreements, and thereafter, it appears, refers to both as one and the same, "Agreement." (Archdiocese Cross-Motion ¶¶ 3 (citing to the "Agreement" attached as Exhibit B, which includes both the Lease and License Agreements), 4, R.R. at 199a).) It also refers to the "1989 Lease Agreement" as the document that required the County to provide a defense. (*Id.* ¶ 9, R.R. at 200a.) In its memorandum in support, the Archdiocese states that the County breached the "1989 **License** Agreement," but then alleges that the County breached its obligations arising out of the "1989 **Lease** Agreement." (Archdiocese

---

[4] Specifically, the Archdiocese contended that it detrimentally relied upon the County's promises to defend and indemnify it "by acquiescing to the County's appointment of counsel . . . and relinquishing its right to be represented by its historical counsel of choice . . . ." (R.R. at 91a.) In essence, had the County not promised to defend and indemnify the Archdiocese pursuant to the License Agreement, the Archdiocese asserts "that it would never have agreed to be represented by anyone other than" its chosen counsel. (*Id.*)

Memorandum in Support, R.R. at 205a, 209a (thereafter referring only to the "Agreement" (emphasis added)).) While both agreements obligate the County to obtain liability insurance, **only the License Agreement** contains the requirement that the County must procure $1,000,000 in liability insurance naming the Archdiocese as an additional insured, which forms the basis of the Archdiocese's argument in this appeal.

Oral argument was held before the trial court on July 22, 2015.[5] By order dated July 31, 2015, upon consideration of the County's motion, the Archdiocese's responses thereto, and oral argument, the trial court directed the parties to submit a joint stipulation of facts addressing the following: (a) the ownership of the sidewalk where Mrs. Pachella was injured; (b) the ownership of the adjoining road to the subject sidewalk; and (c) **the named insureds on the insurance policy described in Section 3A of the License Agreement**. (Tr. Ct. Order, *see* Archdiocese's Reply Br., Ex. A.) The Joint Stipulation of Facts (Joint Stipulation) was filed with the trial court on August 20, 2015, which stated the following: (a) the sidewalk where Mrs. Pachella fell is owned by the Archdiocese; (b) the adjoining road to that sidewalk is owned by the Municipality of Norristown; and (c) **the County** is a named insured under Harco National Insurance Company, Policy No. C.P. 00011024 (Harco Policy),[6] "which has limits of liability of $1 million per occurrence and $3 million aggregate for general liability claims occurring during its policy period from July 1, 2005 to July 1, 2006 . . . [and which] is in excess to a $250,000 self-insured retention funded by the County"; the

---

[5] Both parties acknowledge in their briefs that there is no transcript of oral argument. (*See* Archdiocese's Br. at 13 n.3; County's Br. at 21-22.)

[6] The Harco Policy is attached to the Joint Stipulation as Exhibit A. (Supplemental Reproduced Record (S.R.R.) at 5b-57b.)

Harco Policy **includes an endorsement entitled "'Additional Insured** – By Contract, Agreement or Permit[,]'" which amended the Harco Policy "'to **include as an insured** any person or organization, for which a written contract, agreement or permit provides insurance under this policy, . . . ' with certain exclusions set forth therein," and a "'Self-Insured Retention Endorsement[,]' which applies the [Harco P]olicy's coverage as excess to a County-funded self-insured retention of $250,000." (Supplemental Reproduced Record (S.R.R.)[7] at 1b-2b (emphasis added and omitted).)

By two separate orders dated September 2, 2015, the trial court granted the County's motion and denied the Archdiocese's cross-motion. On September 29, 2015, the Archdiocese filed its first Notice of Appeal, and on November 9, 2015, it filed a concise statement of errors complained of on appeal (2015 Statement), pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa. R.A.P. 1925(b).[8] (R.R. at 444a-52a.) In its 2015 Statement, the Archdiocese uses the following terms: "1989 Agreement," "Lease Agreement," "Agreement," and "1989 Lease and License Agreement." (*Id.*) When specifying which agreement had been breached, the Archdiocese stated that all of its claims arise under the

---

[7] The S.R.R. is attached to the County's brief.

[8] Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, as follows:

> **(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.**--If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R.A.P. 1925(b).

"1989 Agreement." (*Id.* at 446a.) The trial court issued an opinion on November 25, 2015 (November Opinion). The November Opinion explained that the appeal was interlocutory because neither of the September orders disposed of all claims of all parties, as the Pachellas' personal injury claim was still pending, nor did they meet the definition of a "final order" in Pennsylvania Rule of Appellate Procedure 341, Pa. R.A.P. 341, or a "collateral order" in Pennsylvania Rule of Appellate Procedure 313, Pa. R.A.P. 313. (Nov. Op. at 4-6.) Further, resolution of the contract and negligence claims against the County would not have any bearing on the personal injury claim. (*Id.* at 5.)

Even if the appeal was proper, the trial court found that the County is immune from the Archdiocese's negligence claim under the Tort Claims Act and that none of the exceptions in the Act apply. (*Id.* at 6-7.) Specifically, the trial court considered the sidewalk exception found in Section 8542(b)(7) of the Tort Claims Act, which imposes liability on local agencies for injuries occurring because of "[a] dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency . . . ." 42 Pa. C.S. § 8542(b)(7). The trial court concluded that the exception did not apply in this case because **the Archdiocese owned the sidewalk** where Mrs. Pachella fell, and the **Municipality of Norristown owned the street adjoining that sidewalk, not the County**. (Nov. Op. at 6-7, 10 (citing Joint Stipulation ¶¶ a-b).) Regarding the contract claim, the trial court concluded that, because the underlying negligence claim sounds in tort, not in contract, and "**the legislature never intended for a local agency to be held liable for tort damages under a contract theory**," the **indemnification provision** was unenforceable. (*Id.* at 7-8 (emphasis in original) (quoting *Sims v. Silver Springs-Martin Luther Sch.*, 625 A.2d 1297, 1302 (Pa. Cmwlth. 1993)).)

8

The trial court did not address the Harco Policy mentioned in and attached to the Joint Stipulation. This Court quashed the Archdiocese's appeal because the September orders were not final orders pursuant to Pa. R.A.P. 341. *See Pachella v. Archdiocese of Phila. v. Cnty. of Montgomery* (Pa. Cmwlth., Nos. 1999 and 2000 C.D. 2015, filed Dec. 3, 2015) (two orders quashing the appeals).

Upon the Pachellas' request, the case was transferred to Philadelphia common pleas, which listed the matter for trial to begin on August 12, 2016. On the day of trial, but prior to jury selection, the Pachellas and the Archdiocese reached a settlement as to all claims between them and without prejudice to the Archdiocese pursuing its other claims against the County. The Archdiocese then filed its second Notice of Appeal, asserting that the August 12, 2016 Order ratifying the settlement between the parties made the two September orders final orders by operation of law. The Archdiocese filed a second concise statement of errors complained of on appeal on October 5, 2016 (2016 Statement), pursuant to Pa. R.A.P. 1925(b). (R.R. at 555a-61a.) In its 2016 Statement, the Archdiocese uses the following terms: "Agreement," "1989 Agreement," "1989 Lease Agreement," "1989 License Agreement," "Lease Agreement," and "License Agreement." (2016 Statement, R.R. at 556a-61a.) However, when specifying which agreement was breached, the Archdiocese states that "the 1989 **Lease** Agreement" was breached based on, *inter alia,* the County's failure to obtain liability insurance naming both the County and the Archdiocese as insured. (*Id.*) We again reiterate, however, that the Lease Agreement does not contain the specific insurance requirement; rather, **only the License Agreement** contains the requirement that the County must procure $1,000,000 in liability insurance naming the Archdiocese as an additional insured, which forms the basis of the

9

Archdiocese's argument in this appeal. Philadelphia common pleas issued an opinion on October 20, 2016, referring this Court to the trial court's November Opinion. (*Id.* at 563a-65a.)

The trial court issued another opinion on December 6, 2016 (December Opinion), which relied upon and incorporated its November Opinion except the parts thereof regarding the interlocutory nature of the Archdiocese's previous appeal. In addition, the trial court found that, even if the Lease Agreement was enforceable, the Archdiocese's cross-motion "was properly denied because **it failed to set forth any facts** establishing that . . . [the] County [anticipatorily] breached any terms of the [L]ease [Agreement,]" nor did it establish any facts to support its claim that the County made a "'definite and unconditional repudiation'" that it could not perform its obligations under the Lease Agreement. (Dec. Op. at 1-2 (emphasis added).) Regarding, its failure to set forth any facts establishing breach, the trial court pointed out that all the Archdiocese stated in its cross-motion was that "the County has anticipatorily breached its Agreement with the Archdiocese" and, in its memorandum in support, that "the County may not have obtained the requisite insurance it was required to" under the Lease Agreement. (*Id.* at 1-2.) The trial court also noted that there was evidence in the record that the County did retain a lawyer to defend the Archdiocese. (*Id.* at 2-3.) The trial court, again, did not address the Harco Policy. Therefore, the trial court affirmed the two September orders. This appeal followed.[9]

---

[9] In reviewing a trial court's grant of summary judgment, our review "is limited to determining whether the trial court committed an error of law or abused its discretion. Moreover, summary judgment may be granted only in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *Bashioum v. Cnty. of Westmoreland*, 747 A.2d 441, 442 n.l (Pa. Cmwlth. 2000) (citations omitted).

10

On appeal, the Archdiocese argues that the trial court erred as a matter of law in granting summary judgment to the County under the Tort Claims Act because the Archdiocese had also alleged a breach of contract claim based on the County's failure to obtain $1,000,000 of liability insurance naming both the County and the Archdiocese as insured. The Archdiocese contends that the trial court erred by failing to address this claim in its November and December Opinions. The Archdiocese argues that the Tort Claims Act does not act as a bar to such breach of contract claims, and that it properly pled this breach of contract claim in its Joinder Complaint and again in its cross-motion and memorandum in support. The Archdiocese further contends that the Joint Stipulation between the parties, which provides that only the County is a named insured under the Harco Policy, is evidence that the County breached the License Agreement. Importantly, on appeal, the Archdiocese does **not challenge the trial court's grant of summary judgment to the County on the Archdiocese's claim for common law contribution and/or indemnification for the underlying tort claim**, **nor does it challenge the trial court's decision that the County cannot contract away its immunity under the Tort Claims Act.**

In response, the County asserts that the Archdiocese did not properly allege a breach of contract claim regarding the contractual insurance requirement, and, therefore, the claim is waived. Specifically, the County contends that the Archdiocese did not allege material facts in the Joinder Complaint, or in any of its other filings before the trial court, to demonstrate that the County breached its obligation to obtain liability insurance naming the Archdiocese as an insured, and made only an indefinite statement in its memorandum in support that the County may not have obtained the requisite liability insurance, without further

11

development of that argument. If the Archdiocese did allege such a claim, the County argues that the record does not support the Archdiocese's breach of contract claim because the County's Harco Policy, specifically, the additional insured endorsement, satisfies its obligation to obtain liability insurance under the License Agreement.

We initially address the County's assertion that the Archdiocese did not allege sufficient facts in its Joinder Complaint to support a claim that the County's failure to obtain the required liability insurance constituted a breach of the License Agreement. Pleadings must set forth "[t]he material facts on which a cause of action or defense is based [and] shall be stated in a concise and summary form." Rule 1019(a) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1019(a). "The complaint must not only apprise the defendant of the claim being asserted, **but it must also summarize the essential facts to support the claim**." *McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010) (citation omitted) (emphasis added). In order to maintain a cause of action for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Id.* at 340 (quoting *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005)).

Here, the Joinder Complaint fails to state a breach of contract claim based on the County's failure to obtain the requisite liability insurance naming the Archdiocese as an insured. In its Joinder Complaint, the Archdiocese alleged that the accident causing Mrs. Pachella's injuries was due to the County's negligence in failing "to act with diligence and care" and that if it were to be found liable, it would be "because the County . . . breached its contract and duties." (Joinder Compl. ¶¶ 14, 18.) As a result, the Archdiocese alleged that the County alone

would be liable to the Pachellas or, in the alternative, that the County was jointly and severally liable with the Archdiocese or liable to the Archdiocese for contribution and/or indemnification.  (*Id.* ¶ 16, 21.)  Paragraphs 13 and 17 of the Joinder Complaint merely state that the County agreed to obtain insurance and to defend and indemnify the Archdiocese for any injuries arising out of the Lease and License Agreements.  (*Id.* ¶¶ 13, 17.)

While the Archdiocese did assert in the Joinder Complaint that there is an agreement between it and the County, it notably did not state in the Joinder Complaint that the County **breached** the **License** Agreement **by failing to obtain the requisite liability insurance naming it as an insured**, nor did it seek to amend the Joinder Complaint in accordance with Rule 1033 of the Pennsylvania Rules of Civil Procedure,[10] Pa. R.C.P. No. 1033, to include that claim.  Rather, the Archdiocese has maintained throughout these proceedings that the County breached the License Agreement **by refusing to defend and indemnify it**, not by failing to obtain the requisite liability insurance.  (*See, e.g.*, R.R. at 217a (stating that "[t]he County's anticipatory breach of its Agreement with the Archdiocese . . . has worked an injustice upon the Archdiocese . . . **[b]ased entirely on the contractual promises of the County that it would defend and indemnify the Archdiocese** . . . pursuant to the terms of the Agreement") (emphasis added).)  It appears that the Archdiocese is conflating the County's obligation to defend and indemnify the Archdiocese with the County's obligation to obtain liability insurance.  However, such requirements are, in fact, **distinct** contractual obligations, the breach of which must be separately pled in order "to alert the other

---

[10] Rule 1033(a) provides that "[a] party, either by filed consent of the adverse party or by leave of court, may at any time . . . amend the pleading."  Pa. R.C.P. No. 1033(a).

party to that which must be defended."[11] *McShea*, 995 A.2d at 340; *see* Pa. R.C.P. No. 1019(a); *see also* License Agreement ¶¶ 3A, 3C, R.R. at 68a-69a. Moreover, the Archdiocese has consistently asked for contribution and/or indemnification based on the **tort claim** in this case and has not alleged any other damages that resulted from the alleged breach. We, therefore, must agree with the County that the Archdiocese has failed to plead facts sufficient to support a breach of contract claim based on the County's failure to obtain liability insurance naming the Archdiocese as an insured.

The Archdiocese also argues that the trial court erred in not addressing its breach of contract claim regarding the contractual insurance requirement in its November and December Opinions. We disagree. As understood by the trial court and the County, there was nothing in the Joinder Complaint, or any of the other pleadings or filings, to indicate that a cause of action for breach of contract for failure to obtain the requisite liability insurance naming the Archdiocese as an insured had been alleged separate and apart from the contractual duty to defend and indemnify. In its November Opinion, the conclusions of which are not before us, the trial court held, after consideration of the motion and cross-motion, the responses thereto, oral argument, and apparently the Joint Stipulation, that the County was immune from the negligence claim asserted in the Joinder Complaint, and that the Archdiocese asserted a breach of contract claim **based upon a duty to**

---

[11] In its brief and reply brief, the Archdiocese also argues that the County failed to mention the Archdiocese's breach of contract claim regarding the contractual insurance requirement in its Motion for Summary Judgment (motion). However, if this claim was not pled sufficiently to put the County on notice, we cannot fault the County for not raising it in its motion.

14

**defend and indemnify**, which the contract could not impose.[12]  (Nov. Op. at 3, 6-8.)

In its December Opinion, which incorporated its November Opinion, the trial court did examine the specific language of the cross-motion, which only vaguely asserted that the County anticipatorily breached its "Agreement" with the Archdiocese, and concluded that the cross-motion "was properly denied because it failed to set forth any facts establishing that . . . [the] County breached any terms of the" Lease Agreement.  (Dec. Op. at 1.)  The trial court further observed that the memorandum in support stated only that "the County may not have obtained the requisite insurance it was required to [] under the terms of the Agreement with the Archdiocese," and concluded that the memorandum in support also did "not include any verified facts that the County breached" the Lease Agreement.  (*Id.* at 2.)  The trial court also noted that there was evidence in the record that the County did retain a lawyer to defend the Archdiocese.  (*Id.* at 2-3.)  These observations, which address only the contractual obligation to defend and indemnify, further support our conclusion, after review, that a breach of contract claim regarding the contractual insurance requirement was not sufficiently pled, and therefore, the trial court did not err in not addressing it.[13]

---

[12] *See City of Phila. v. Gray*, 633 A.2d 1090, 1093 (Pa. 1993) (stating that the "absolute rule of governmental immunity . . . is not waivable nor is it subject to any procedural devise that could render a governmental agency liable beyond the exceptions granted by the legislature"); *see also Matarazzo v. Millers Mut. Grp., Inc.*, 927 A.2d 689, 693 (Pa. Cmwlth. 2007) ("a plaintiff may not avoid the defense of governmental immunity by couching a claim for the recovery of tort damages under a breach of contract theory").

[13] Because we conclude that a breach of contract claim regarding the contractual insurance requirement was not sufficiently pled, we need not address whether the Tort Claims Act acts as a bar to that claim or whether the Archdiocese is insured under the Harco Policy.

Furthermore, also supporting this conclusion, is the Archdiocese's inconsistent reference in its filings, and the apparent confusion resulting therefrom, regarding which agreement had been breached, (*see* discussion *supra* pages 5-7, 9), which resulted in the trial court's November Opinion focusing primarily on the **License** Agreement (providing the duties to defend and indemnify, as well as the specific requirement to procure $1,000,000 in liability insurance naming the Archdiocese as an additional insured), and its December Opinion on the **Lease** Agreement (providing the more general requirement that the County maintain liability insurance concerning its use of the premises).[14] Because the Archdiocese did not consistently cite to the particular "Agreement" that had been breached and used terms interchangeably, which only added to the confusion, it appears there was no reason for the trial court or the County to be aware of, or address, whether the **License Agreement's** specific requirement for the County to obtain $1,000,000 in liability insurance was at issue.

---

[14] In this regard, we note that the Archdiocese's 2015 and 2016 Statements are inconsistent. In its 2015 Statement, the Archdiocese **did not** assert that the trial court erred in granting summary judgment to the County because the County failed to obtain the requisite liability insurance pursuant to the License Agreement. The trial court and the County understood the Archdiocese's two claims, as follows: a contractual claim regarding the County's promise to defend and indemnify the Archdiocese under the License Agreement, and a negligence claim regarding the County's failure to provide safe ingress and egress for voters and candidates at St. Patrick's. (Nov. Op. at 5-7.) It was not until its **2016 Statement** that the Archdiocese alleged that the trial court erred in granting summary judgment because the County failed to obtain the requisite liability insurance, as required by the **Lease** Agreement. (R.R. at 557a.)

16

Accordingly, we conclude that the trial court did not err in granting the County's motion for summary judgment, dismissing it as a party, or in denying the Archdiocese's cross-motion. We therefore affirm Philadelphia common pleas' order.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Brobson did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine Pachella and Richard : 
Pachella, w/h : 
 : 
v. : No. 1609 C.D. 2016
 : 
Archdiocese of Philadelphia and : 
St. Patrick's Parish, : 
Appellants : 

## **O R D E R**

     **NOW**, August 14, 2017, the August 12, 2016 Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

                             _____

                             **RENÉE COHN JUBELIRER,** Judge